366 So.2d 1305 (1978)
LOUISIANA STATE BAR ASSOCIATION
v.
Overton C. THIERRY.
No. 56628.
Supreme Court of Louisiana.
December 15, 1978.
Lolis E. Elie, New Orleans, for defendant-respondent.
Leonard Fuhrer, Chairman, Alexandria, Wood Brown III, New Orleans, Sam J. D'Amico, Baton Rouge, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, Executive Counsel, Louisiana State Bar Ass'n Committee on Professional Responsibility, for plaintiff-petitioner.

DISCIPLINARY PROCEEDING
SUMMERS, Justice.
These proceedings under the Court's original jurisdiction arose out of felony convictions of Overton C. Thierry, a member of the bar of this State, in the United States District Court by the Eastern District of Louisiana. The grand jury indictment charges that during early 1973 Thierry and a codefendant, one Henry Joshua, endeavored to obstruct the administration of justice by Henry Joshua testifying falsely as an alibi witness for Thierry's client in a criminal prosecution for robbery.
After his trial a verdict of guilty was rendered against Thierry on two counts: "Conspiracy to commit an offense or to defraud the U.S.," a violation of Section 371 of Title 18 of the United States Code, and "influencing or injuring officer, juror or witness", a violation of Section 1503 of Title 18 of the United States Code.
*1306 He was sentenced to serve three years on each count, to run concurrently, and to be eligible for parole. The court recommended incarceration at Eglin Field. On appeal his convictions and sentences were affirmed by the Fifth Circuit. Thereafter he served his sentence, being paroled after eight months incarceration. On December 5, 1977 Thierry was discharged from parole.
Pursuant to Section 8 of Article XV of the Articles of Incorporation of the Louisiana State Bar Association, as approved and adopted by this Court, and based upon Thierry's convictions, the Committee on Professional Responsibility of the Louisiana State Bar Association petitioned this Court to suspend Thierry from the practice of law in Louisiana. On September 4, 1975 an order was issued to that effect, directing also that the Committee institute the necessary disciplinary proceedings against Thierry seeking disbarment or other appropriate remedy.
On October 16, 1975 the Committee filed its petition and Thierry responded admitting his convictions and sentences, but he denied that he was morally unfit to practice law and alleged that he was investigating new evidence which would show that he was not guilty of the crimes for which he was convicted. He asserted that he did possess the moral and professional fitness to practice law.
Issue having been joined, the Honorable Raymond H. Kierr was appointed Commissioner to take evidence and report to this Court his findings of fact and conclusions of law. After due notice the hearing was completed on August 25, 1976, and the Commissioner filed his report on May 15, 1978. In a supplemental report of May 16, 1978 the Commissioner recommended the suspension of respondent Thierry from the practice of law for a period of three years. On June 15, 1978 respondent filed a concurrence in the Commissioner's finding of fact and conclusions of law. After oral arguments in this Court on October 9, 1978 the matter was submitted.
Respondent concedes that under Section 8, Paragraph 7(d) of Article XV of the Articles of Incorporation of the Louisiana State Bar Association, the sole issue at a hearing based on respondent's conviction of a crime shall be "whether the crime warrants discipline, and if so, the extent thereof." At the hearing respondent may offer evidence only of mitigating circumstances "not inconsistent with the essential elements of the crime . . . as determined by the statute defining the crime." Respondent contends, however, that facts surrounding the commissioner of the offense insofar as they reflect upon the character or quality of the criminal conduct or complicity therein are admissible on the issue of moral culpability.
The Commissioner heard the testimony of eight New Orleans judges summoned by respondent. Although they knew defendant had been convicted few of them were acquainted with the facts and circumstances of the offense. It was their consensus that respondent is a moral and ethical person, and that notwithstanding his conviction respondent is a person presently fit to resume the practice of law.
Lawyers, ministers, physicians and laymen also testified on behalf of respondent, all attesting to his high morals, competence and good character. The evidence was impressive.
When respondent took the stand in his own behalf, his attorney asked him to present a brief sequence of the events which involved him in the James case and the conduct resulting in his conviction. Counsel for the Committee objected to any evidence that would be inconsistent with the elements of the crime for which respondent was found guilty. He objected that evidence of that nature would lead to the trial of the case again. With the understanding that counsel for respondent would only elicit facts relating to aspects of the trial evidence which were material to mitigation or mitigating circumstances, the Commissioner overruled the objection.
Whereupon respondent testified at length to the circumstances surrounding his involvement in the case. He explained that during 1973 he was requested by the wife of Nolan James to confer with her incarcerated *1307 husband. James, a career soldier stationed in the District of Columbia as a member of the Presidential Honor Guard, persistently protested his innocence concerning the bank robbery charged to him, representing that he was not at the scene. Impressed by James' apparent sincerity, respondent went to Vacherie, Louisiana, to interview James' parents and received confirmation from them that the purpose of their son's trip from Washington D.C., was to borrow money from his father.
While in Louisiana, according to respondent, Nolan James told him that he was fishing at the time of the bank robbery at a place where he met one Henry Joshua. Joshua's name was furnished to respondent as an alibi witness. By his testimony respondent sought to establish his innocence of suborning the witness Joshua. It developed at the trial, however, that respondent was previously acquainted with Joshua and at pertinent times during his investigation of the James case he made payments to Joshua which he said were for services performed by Joshua relating to an insurance business. Ultimately Nolan James confessed that he committed the bank robbery, denying that he had met the alibi witness Joshua, or ever knew him.
The purpose of respondent's testimony and the thrust of his defense, as the Commissioner found, is not a contention by him of error in the federal trial and appellate courts. His position appears to be that in his enthusiasm he acted zealously in the interest of his client as well as out of naivete or ignorance; or, as the assertion was expressed by his counsel, respondent "was overzealous" and, in a situation where "a more experienced lawyer would perhaps have considered the impropriety of his conduct and "have seen [it] as a stop sign", but respondent was unaware and demonstrated a "lack of caution."
Respondent was a graduate of the University of Southwestern Louisiana with the degree of Bachelor of Science. He was drafted in 1958 and released from military service by an occupational discharge under honorable conditions to pursue graduate studies at Louisiana State University. Other educational attainments were a Masters Degree in biological sciences from Loyola University in 1965, graduate study at the University of California in Berkley, teaching at Southern University in New Orleans, and attending law school at night beginning in 1965 until he received his law degree from Loyola University and was admitted to the bar in 1969.
When he began the practice of law respondent volunteered to handle criminal cases for indigent persons in the juvenile courts of New Orleans. He practiced as an associate with an experienced law firm, principally in the field of civil law. Prior to the subornation of the witness in the James case he had tried at least three jury cases and a number of lesser criminal cases in the Orleans Parish Criminal District Court, and one jury trial in the Federal District Court.
So basic to the criminal justice system of this country is the sanctity of the oath of witnesses and the integrity of lawyers that these principles cannot be unknown to or violated by, the least learned or experienced in the profession of law. Without a fervent regard for them our system of justice must come to ruin. While they are intangibles these principles are the bedrock upon which the concept of American justice rests.
Respondent's education and experience in the law was such that his actions cannot be condoned by his purported zealous attitude, naivete or limited practice, or this Court's compassion for him in this ordeal. Without a firm attitude in these matters this Court would be untrue to its obligation and responsibility to maintain and uphold the high ethical standards of the profession of law and the administration of justice.
For the reasons assigned, it is ordered, adjudged and decreed that the name of Overton T. Thierry, respondent herein, be stricken from the Roll of Attorneys and his license to practice law in the State of Louisiana is revoked effective September 4, 1975, respondent to bear all costs of this proceeding.
*1308 DENNIS, J., concurs, but is of the opinion that this court should fully consider and articulate its policy in determining when disbarments shall be retroactive. In my opinion, some previous disbarments should have been treated equally. E. g., LSBA v. Phillips, 363 So.2d 667.