379 So.2d 1065 (1980)
LOUISIANA STATE BAR ASSOCIATION
v.
William A. SUMMERS, III.
No. 61905.
Supreme Court of Louisiana.
January 28, 1980.
Harold J. Lamy, New Orleans, Chairman, Roland J. Achee, Shreveport, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Leonard Fuhrer, Alexandria, Edgar H. Lancaster, Jr., Tallulah, Alfred S. Landry, New Iberia, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, Executive Counsel for Louisiana State Bar Association, Committee on Professional Responsibility for petitioner.
Emile Carmouche, Gretna, for respondent.

Disciplinary Proceeding
BLANCHE, Justice.
This matter comes before us on a petition of the Committee on Professional Responsibility of the Louisiana State Bar Association seeking disciplinary action against one of its members, William A. Summers, III. Following a formal investigatory hearing, the Committee instituted this suit and we appointed Mr. James J. Davidson, III as Commissioner to take evidence and file a report with this Court stating his findings of fact and conclusions of law.
In its petition filed March 28, 1978, the Louisiana State Bar Association made the following four specifications of misconduct:
SPECIFICATION NO. 1
Respondent was retained in 1974 by Josephine Russo Aiavolasiti and Vincent E. Aiavolasiti to assist and advise them concerning certain financial problems. With respect to this representation, Respondent did fail to advise them of a conflict of interest created by the fact that certain parties with whom Respondent would have them transact business were, in fact, also Respondent's clients. Specifically, Respondent, in concert with Pontchartrain Mortgage Investment Corporation, also Respondent's client, a fact not made known by Respondent to his clients, Mr. and Mrs. Aiavolasiti, arranged the following business transactions with the resulting consequences. Mr. and Mrs. Aiavolasiti owned a residence located at 6066 Bellaire Drive in New Orleans, in which they had an equity *1066 valued at approximately Twenty-Five Thousand ($25,000.00) Dollars. Acting on Respondent's advice, Mr. and Mrs. Aiavolasiti executed a promissory note and collateral mortgage in favor of Pontchartrain Mortgage Investment Corporation on December 13, 1974, in the principal amount of $20,000, with interest at the rate of ten (10%) percent per annum from maturity and due sixty (60) days from date. Mr. and Mrs. Aiavolasiti only received $6,913.00 from the proceeds of this loan after $7,000 was deducted as a discount, $1,087 was deducted as closing costs, and Respondent deducted $5,000 as his fee. Again, acting upon Respondent's advice after the loan was in default and executory proceedings were filed, Mr. and Mrs. Aiavolasiti executed a dation en paiement for their property to Pontchartrain Mortgage Investment Corporation for cancellation of the mortgage and the sum of $500.00. Respondent never disclosed his relationship with Pontchartrain Mortgage Investment Corporation to Mr. and Mrs. Aiavolasiti, including being agent for service of process and attorney for the corporation. All of the foregoing being in violation of Disciplinary Rule 1-102 of the Code of Professional Responsibility of this Association.
SPECIFICATION NO. 2
Respondent was retained by Josephine Russo Aiavolasiti and Vincent E. Aiavolasiti to provide legal counsel in an effort to obtain a lessee for their business known as Swanson's Seafood Restaurant. Thereafter, he advised his clients that The Omni Corporation would execute such a lease of the Restaurant. Respondent did not advise his clients of his proprietory interest in The Omni Corporation and that he was an officer thereof. On December 31, 1974, Respondent presented a document to Mr. and Mrs. Aiavolasiti for their signature. Respondent represented this document to be a lease-purchase agreement when, in fact, the document, which Respondent had his clients execute, was an Act of Sale and Assumption with the stated consideration being $2,000.00 cash, the delivery of a $15,000.00 note to be paid in sixty (60) equal installments of $315.03 by The Omni Corporation (which note was never delivered), assumption by The Omni Corporation of that certain mortgage executed by Respondent's clients in favor of Mrs. Frank Swanson in the original amount of $62,300.00, and assumption by The Omni Corporation of all outstanding obligations of Swanson's Restaurant, not to exceed $50,000.00. That Respondent's failure to properly and clearly disclose his conflict of interest and the true nature of the instrument he advised Mr. and Mrs. Aiavolasiti to sign, all as set out above, were in violation of the Code of Professional Responsibility, specifically, DR 1-102.
SPECIFICATION NO. 3
A few months after Omni had assumed title to Swanson's Restaurant through the transaction set out in Specification No. 2 above, Mr. and Mrs. Aiavolasiti became aware of the fact that various obligations they were led to believe by Respondent were assumed by The Omni Corporation were not being paid. They consulted Respondent and he assured them he would handle such matters. Thereafter, however, Respondent failed to properly handle their legal and financial problems. On February 26, 1975, suit was filed by George Aiavolasiti against Mr. and Mrs. Vincent E. Aiavolasiti individually d/b/a Swanson's Restaurant, on a promissory note in the amount of $25,000, executed by Vincent Aiavolasiti in favor of the Whitney National Bank and purchased by George Aiavolasiti. Suit was under docket number 587-868 of the Civil District Court for the Parish of Orleans. Respondent undertook the defense of this claim on behalf of Mr. and Mrs. Aiavolasiti, without identifying to them his proprietory interest and official position in The Omni Corporation which was in conflict with their interest. This note was one of the obligations assumed in the transfer of the business described in *1067 Specification No. 2, above. Thereafter, Respondent failed to third-party his company, The Omni Corporation, or to otherwise seek relief from it, and ultimately permitted a judgment by default to be entered on July 2, 1975, against his clients, all in violation of Disciplinary Rules 1-102(A)(4), 5-101(A), 6-101(A)(3), and 7-101(A) of the Code of Professional Responsibility of this Association.
SPECIFICATION NO. 4
Mr. and Mrs. Aiavolasiti consulted LeRoy A. Hartley, Attorney, about their plight and on July 13, 1975, terminated Respondent's services. Thereafter, T. Allen Usry, Esq., instituted legal proceedings against Respondent on behalf of Mr. and Mrs. Aiavolasiti seeking a return of their property and other legal and equitable relief. Thereafter, Respondent ignored letters, eluded process servers, and generally attempted to escape the responsibilities of his misconduct in violation of Disciplinary Rule 6-102 of the Code of Professional Responsibility of this Association.
The Commissioner held his hearing and thereafter, on August 22, 1979, filed his report and recommended that respondent be suspended from the practice of law for six months. Both respondent and the Committee concurred in the findings and conclusions. However, the Committee seeks a period of suspension greater than that recommended by the Commissioner. Following are the facts and conclusions of the Commissioner as adopted by this Court.
"Respondent, William A. Summers, III, was retained in 1974 by Josephine Russo Aiavolasiti and Vincent E. Aiavolasiti to advise them with reference to certain financial problems ... [W]ith respect to this representation, Respondent [failed] to advise them of a conflict of interest created by the fact that certain parties with whom Respondent would have the Aiavolasitis transact business during the course of their financial dealings were, in fact, also Respondent's clients. Specifically, Respondent, in concert with Pontchartrain Mortgage Investment Corporation, also Respondent's client, arranged several business transactions.... Respondent did not make known to his clients, Mr. and Mrs. Aiavolasiti, of his representation of Pontchartrain Mortgage Investment Corporation. During the course of these dealings, Mr. and Mrs. Aiavolasiti executed a promissory note and collateral mortgage in favor of Pontchartrain Mortgage Investment Corporation on December 13, [1974] in the principal amount of $20,000.00, with the interest at the rate of 10 percent per annum from maturity and due sixty days from date. [In return] for their execution of the above said promissory note and collateral mortgage, Mr. and Mrs. Aiavolasiti only received $6,913.00 from the proceeds of this loan after $7,000 was deducted as a discount, $1,087.00 was deducted as closing costs, and Respondent deducted $5,000 as his fee [to handle all matters for the Aiavolasitis]. Acting on Respondent's advice, Mr. and Mrs. Aiavolasiti executed a dation en paiement of their property to Pontchartrain Mortgage Investment Corporation for cancellation of the mortgage in the sum of $500.00 after said mortgage was in default and executory proceedings were filed. Respondent... never disclosed his relationship with Pontchartrain Mortgage Investment Corporation to Mr. and Mrs. Aiavolasiti, including being agent for service of process and attorney for the corporation.... [T]he above said conduct was in direct violation of Disciplinary Rule 1-102 of the Code of Professional Responsibility of the Louisiana State Bar Association. "... Further, ... Respondent was retained by Mr. and Mrs. Aiavolasiti to provide legal counsel in an effort to obtain a lessee for their business known as Swanson's Seafood Restaurant. He thereafter arranged a purported lease-purchase agreement between the Omni Corporation and his clients, Mr. and Mrs. Aiavolasiti, without advising his clients of his proprietary interest in the Omni Corporation and... that he was an officer thereof. [Respondent's] clients [understood] that the document was a lease-purchase agreement when, in fact, the document which Respondent *1068 had his clients execute was an act of sale and assumption with the stated payment of $2,000.00 cash, the delivery of a $15,000.00 note to be paid in sixty (60) equal installments of $315.03 by the Omni Corporation, the assumption by Omni Corporation of that certain mortgage executed by Mr. and Mrs. Aiavolasiti in favor of Mrs. Frank Swanson, in the original amount of $62,300.00, and the assumption by Omni Corporation of all outstanding obligations of Swanson's Restaurant not to exceed $50,000.00.... Respondent's failure to disclose his conflict of interest and [to assure that Mr. and Mrs. Aiavolasiti knew] the true nature of the instrument he advised them to sign were in direct violation of Disciplinary Rule 1-102 of the Code of Professional Responsibility of the Louisiana State Bar Association.
"... [S]hortly after the transfer of Swanson's Seafood Restaurant to the Omni Corporation, Mr. and Mrs. Aiavolasiti became aware that various obligations which Respondent led them to believe were assumed by the Omni Corporation were not being paid. Despite Respondent's assurances that he would handle such matters, on February 26, 1975, suit was filed by George Aiavolasiti against Mr. and Mrs. Aiavolasiti, individually, d/b/a Swanson's Seafood Restaurant, on a promissory note in the amount of $25,000.00 executed by Mr. Aiavolasiti in favor of Whitney National Bank and purchased by George Aiavolasiti. The suit was under Docket Number 587-868 of the Civil District Court of the Parish of Orleans. Respondent undertook the defense of the claim on behalf of Mr. and Mrs. Aiavolasiti without identifying to them his proprietary interest and official position in the Omni Corporation which was in conflict with their interests. The note previously described was one of the obligations assumed in the transfer of the business described in specification No. 2 above. [H]owever, thereafter, Respondent failed to third-party his company, the Omni Corporation, or otherwise to seek relief from it, and ultimately permitted a judgment by default to be entered against his clients on July 2, 1975.... [T]he aforesaid acts are in direct violation of Disciplinary Rules 1-102(A)(4), 5-101(A), 6-101(A)(3), and [7-101(A)] of the Code of Professional Responsibility of the Louisiana State Bar Association.
"... Mr. and Mrs. Aiavolasiti terminated Respondent's service on July 13, [1975] and instituted legal proceedings against Respondent seeking a return of their property and other legal and equitable relief. Thereafter, Respondent ignored letters, evaded process servers, and generally attempted to escape the responsibilities for his misconduct.... [These] actions were in direct violation of Disciplinary Rule 6-102 of the Code of Professional Responsibility of the Louisiana State Bar Association."
The Commissioner also found that Summers "intentionally committed the acts of commission or omission ... [which] violated the various Disciplinary Rules of Professional Responsibility." The Commissioner stated that he felt these acts to be "intentional and in direct contravention of the interest of both Respondent's clients and the Louisiana State Bar Association." In mitigation of the offenses, the Commissioner did find that Respondent had "apparently made complete restitution of all losses to those parties involved". As a result of all of the above, the Commissioner recommended that the appropriate disciplinary action would be a suspension of Summers' license to practice for a period of six months.
We note that Respondent consistently failed to advise his clients, the Aiavolasitis, of adverse interests which he had (either other clients or actual proprietary interests) and which he may have been serving while he was supposed to be representing their interests. Not only was there a failure to disclose this information but also a failure to explain to them the nature of an instrument which he had them sign. That instrument instead of being a lease-purchase agreement (as the Aiavolasitis believed), was an act of sale in which the purchaser was a company of which Respondent was part owner. A full copy of the instrument *1069 was not presented to them for their signatures (the first page was missing), nor was a copy ever furnished to them.
The only restitution which we can find to have been made by Respondent was that achieved through the filing of suits, and the only payments made were those by Respondent's liability insurer. The Aiavolasitis were not able to regain their home, nor were they able to regain their business except for rights to the name, which they finally were able to regain after a lawsuit and to sell for less than the value of the entire business.
The supposed full representation in all of their affairs, for which the Aiavolasitis paid $5,000, brought them only a compounding of the problems which they sought to have resolved.
The purpose of taking disciplinary action against a member of the bar is not to provide punishment for his acts or his failure to act. Rather, disciplinary action is designed to protect the public, the courts, and other members of the profession from such things as future misuse of a position of trust or from the actual disrepute and lack of trustworthiness arising from criminal conduct or moral turpitude. See, e. g., La. State Bar Ass'n v. Brown, 291 So.2d 385 (La.1974); La. State Bar Ass'n v. Weysham, 307 So.2d 336 (La.1975) and cases cited therein.
Honesty, integrity and professional competence are qualities which must be demanded of attorneys and judges. In the case of a lawyer, it is his fair and full representation of his clients' interests that gives the advocacy concept of our system of law its meaning. He is also the major influence in the judiciary's function to render fair and impartial justice to those whom we both serve. For the sake of the system, he owes the duty to conduct his clients' affairs so as not to destroy public confidence in the profession and the courts which he serves.
We feel that Respondent's activities show not only an ineptitude in the practice of law but such fault as to render him unworthy of the trust of his clients, of the courts, or of other members of the legal profession. Such activities not only cause direct harm to his clients but also bring the entire profession under a shadow because the lack of the ability to be trusted can be extended by his clients and other members of the public to other attorneys and to the courts in which they practice.
Given the circumstances of misconduct as shown in this case and the harm caused to his clients, as well as the adverse reflection cast upon the entire legal profession by Respondent's conduct, we feel that only the disbarment of Respondent can be the appropriate action imposed by our obligation to the public and to the profession.
For the reasons assigned, it is ordered, adjudged and decreed that the name of William A. Summers, III be stricken from the Roll of Attorneys and his license to practice law in the State of Louisiana be revoked and cancelled.
DISBARMENT ORDERED.