416 So.2d 62 (1982)
LOUISIANA STATE BAR ASSOCIATION
v.
Lewis WEINSTEIN.
No. 81-B-0914.
Supreme Court of Louisiana.
June 21, 1982.
*63 Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, Alfred S. Landry, New Iberia, Phillippi P. St. Pee, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Jr., Natchitoches, Thomas O. Collins, Jr., New Orleans, for relator.
John R. Martzell, New Orleans, Malcolm W. Feist, Shreveport, for respondents.

DISCIPLINARY PROCEEDINGS
LEMMON, Justice.
This is a disciplinary proceeding instituted by the Louisiana State Bar Association through its Committee on Professional Responsibility. The Committee's petition is based upon respondent's conviction in federal court of aiding and abetting in making false statements to the United States Department of Housing and Urban Development in violation of 18 U.S.C. §§ 1012 and 2 (1976).
After a hearing, the Commissioner appointed by this court filed his report, in which he stated his findings of fact and conclusions of law, and recommended an official public reprimand as appropriate disciplinary action. The Committee filed a concurrence with the Commissioner's findings of fact and conclusions of law, but did not concur in the Commissioner's recommendation as to the extent of discipline. In its brief, the Committee recommended that respondent be suspended from the practice of law for a period of up to six months.
The record of the disciplinary proceedings establishes that respondent, between 1970 and 1972, was closing loans for Graves Construction Company, Inc.[1] At one time respondent had owned stock in the corporation, but had sold the stock prior to the events in question.
Glenn Graves, president of the corporation, was having difficulty competing in the Shreveport market with the construction and sale of homes under the Federal Assistance Act, known as Act 235 houses. Graves and respondent learned that other construction companies were waiving many of the requirements for a prospective purchaser's qualification for the Act 235 houses, particularly the requirement of a $200 down payment. On Graves' behalf, respondent and another notary secured affidavits of 5,275 purchasers of Act 235 houses from other builders in the Shreveport area, in which the affiants stated they were not required to make down payments.
Graves and respondent then went to the director of the Federal Housing Authority in Shreveport and asked that the practice of waiving the requirement of a down payment be stopped. According to respondent, the director indicated that he was authorized to waive any and all requirements, including that of a $200 down payment, and exhibited a letter of authority.
Respondent also determined that many other attorneys in the area had handled similar closings in which no down payment was made. As a consequence, Graves Construction began selling Act 235 houses without requiring the $200 down payment. In *64 each transaction, respondent prepared the note, deed and mortgage, and he disbursed the funds, while Graves provided a form letter indicating that a $200 down payment had been made. While respondent did not prepare or sign the form letters, he included them in the closing package, knowing that the down payment indicated in the form letter had not in fact been made.[2]
Respondent, along with Graves and the corporation, were ultimately charged in a 42-count felony indictment resulting from these closing practices. The federal district judge initially dismissed the indictment, finding government misconduct and entrapment. On appeal, that dismissal was reversed, the court holding that the issues of entrapment and governmental misconduct were questions of fact for the jury.
Faced with the possibility of an unfavorable jury decision on the 42-count felony indictment on charges of making false statements, respondent through his attorney negotiated a plea bargain, in which he pleaded guilty to four misdemeanor counts of aiding and abetting in making false statements. Respondent was sentenced to six months imprisonment on each count to run concurrently, with confinement suspended, and was additionally placed on supervised probation for three years and fined $1,000 on each count.[3] Petitioner paid the fine immediately, and he subsequently completed the probationary period successfully.
After hearing the above evidence, the Commissioner found that respondent had knowingly provided false information, despite his claim that he was authorized to waive the requirement of the down payment by the area director of F.H.A. Noting that respondent did not directly profit from the misstatements and that the primary benefit was to his client, Graves Construction, the Commissioner concluded that respondent did not knowingly attempt to defraud anyone and that the charges stemmed from poor judgment, rather than from criminal intent.
Nevertheless, finding that respondent had violated the duty of an attorney to uphold the integrity of the profession and to avoid even the appearance of impropriety, the Commissioner concluded that the conduct warranted discipline. However, because respondent had already been severely punished and because the facts of the case were exceptional, the Commissioner did not recommend disbarment or suspension. Taking cognizance of the amount of time that has elapsed since the incidents, of the harshness of the original indictment and the vast difference between the indictment and the plea finally accepted, of the time and expense incurred in defending the federal charges, and of respondent's lack of criminal intent, the Commissioner recommended an official public reprimand as appropriate discipline.
We agree that an official public reprimand, rather than suspension or disbarment, is the appropriate disciplinary action in this case. The practice of using false statements about the down payment in closing packages for Act 235 houses not only was widespread in the Shreveport area, but also was knowingly tolerated, if not encouraged, by the F.H.A. area director.[4] The fact that the practice was widespread in the legal community and may have been induced by the governmental agency does not excuse respondent's behavior, but certainly should be weighed heavily in determining *65 the appropriate disciplinary action against him.
Moreover, numerous business and professional persons, as well as clergy members, enthusiastically endorsed respondent when he was up for sentencing in federal court. The fact that the federal district judge, who was entirely familiar with the matter, saw fit not to impose confinement is another factor favoring respondent. Additionally, despite the notoriety over an extensive period of time, respondent's clients have continued to entrust him with large sums of money in his notarial practice.
The purpose of disciplinary proceedings is to insure that attorneys maintain appropriate standards of professional conduct and thus to protect the public and the administration of justice. Louisiana State Bar Assn. v. Heymann, 405 So.2d 826 (La. 1981). This purpose is not served by imposing a greater discipline than is warranted by the seriousness of the conduct in question, considered in the light of all of the aggravating and mitigating circumstances.
Accordingly, it is ordered that Lewis Weinstein be issued an official public reprimand for his conduct in this matter. All costs are assessed to respondent.
NOTES
[1] In disciplinary matters after final conviction of a crime, the certificate of conviction is conclusive evidence of guilt, and the sole issue is whether the crime warrants discipline. However, the respondent is permitted to offer evidence of mitigating circumstances not inconsistent with the essential elements of the crime. Articles of Incorporation, La.St.Bar Assn., Art. 15, § 8(7).
[2] The form letter, provided by the federal agency, simply indicated that a down payment was made. Graves signed the form and gave it to respondent as a part of each closing package.
[3] The federal government also filed a civil action against respondent and others based on the alleged misconduct. Respondent has settled his portion of the lawsuit for $12,500.
[4] In fact, one of the attorneys assigned to the federal prosecution of respondent's case had to be recused when it was discovered that he had handled closings of Act 235 houses in his earlier practice in almost the identical manner as respondent did. Furthermore, respondent's own legal secretary testified before the federal grand jury that respondent and Graves had refused to sell her an Act 235 house because she did not qualify and that she thereafter acquired such a house from another builder through the intervention of the F.H.A. area director, who "walked" her through the deal.