420 So.2d 1110 (1982)
LOUISIANA STATE BAR ASSOCIATION
v.
Oscar E. KRAMER, Jr.
No. 80-B-1505.
Supreme Court of Louisiana.
October 18, 1982.
*1111 Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Phillippi P. St. Pee, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Natchitoches, Thomas O. Collins, Jr., New Orleans, for relator.
George C. Ehmig, Gretna, for respondent.
WATSON, Justice.
This is a disciplinary proceeding against Oscar E. Kramer, Jr. brought by the Louisiana State Bar Association through its Committee on Professional Responsibility. The Supreme Court of Louisiana has original jurisdiction. Art. 5, § 5(B), LSA-Const. 1974.
Attorney Kramer and co-defendant Joseph D. Beasley were convicted in March of 1975, of conspiring to defraud the United States, 18 U.S.C. § 371, § 2, and making false claims, 18 U.S.C. § 287, § 2. The jury found criminal intent, concluding that the crimes were knowing and willful. The three count convictions were affirmed on April 8, 1977, in United States v. Beasley, 550 F.2d 261 (5 Cir.). Kramer was sentenced to two concurrent years on each of the three counts. He completed his sentence, serving a year and a half, and was released from supervision in May of 1979.
Kramer's convictions arose out of his employment as director of finance for the Family Health Foundation. This nonprofit corporation provided family planning services to those receiving benefits from the Aid to Dependent Children program. In essence, Beasley and Kramer claimed funds for nonexistent capital projects and diverted the money to other purposes. Kramer had to take bankruptcy and did not personally profit from the Family Health Foundation. The offenses were not connected with the practice of law. The federal court stated:
"It should be noted that this Court entertains no doubt as to the many good things accomplished by the Family Health Foundation and the appellants. Their work for the individual, the scientific and professional communities, and society as a whole is admirable and commendable." 550 F.2d at 264.
After his admission to the bar in 1969, Kramer worked as a tax accountant for Peat, Marwick, Mitchell & Company; as comptroller for Crownwell Oil Company; as financial vice-president for Idso Investments, Inc.; and then as treasurer of the Family Health Foundation beginning in 1971. He feels that he was "a pioneer" (Tr. 69) and described his situation as one where the government had changed the rules.[1] Kramer's position with the Foundation was bonded, but no civil action has been instituted.
Subsequent to his involvement with the Foundation, Kramer managed a substantial apartment complex in Baton Rouge with monthly rentals in excess of twenty thousand dollars. Additionally, he handled a transaction for the complex involving approximately 2.2 million dollars. His money management was exemplary.
During Kramer's incarceration, he had a severe heart attack. Before and after his release from jail, he has practiced very little law. Kramer desires to retain his legal license primarily as an asset in seeking an executive position, although he also envisions the possibility of a bankruptcy practice.
*1112 When an attorney is convicted of any serious crime, the Committee on Professional Responsibility asks for appropriate disciplinary action to protect the public against those who are unfit to practice law. Articles of Incorporation of the State Bar Association, Art. 15, § 8. On September 18, 1980, Kramer was suspended from practice.
The commissioner appointed to hold a hearing in the matter reported that: the conviction is final; the Louisiana State Bar Association was not guilty of laches and acted expeditiously upon receiving notice of Kramer's conviction; Kramer refuses to admit guilt; the criminal activity did not involve any violation of attorney-client duties or misuse of client's funds. The commissioner recommended suspension for twenty-four months from the hearing date on March 5, 1982.
Both Kramer and the Louisiana State Bar Association oppose the commissioner's report. Kramer contends that he is contrite about his illegal acts; argues that some consideration should be given to the association's five year delay; and maintains that less severe discipline has been administered for more serious offenses. The association contends that those convicted of similar offenses have been disbarred.
Kramer claims that he was prejudiced by the Bar Association's delay in taking action. In other instances, disciplinary proceedings have been instituted long after the crime, and there is no statutory prescriptive period. Louisiana State Bar Ass'n v. Loridans, 338 So.2d 1338 (La., 1976); Louisiana State Bar Ass'n v. Miller, 382 So.2d 911 (La., 1980). However, the delay of five years between Kramer's conviction and institution of these proceedings does merit consideration. "The disbarment or discipline of an attorney long after his misconduct has occurred does not have a salutary effect on other members of the bar; nor does it serve well to preserve the integrity of the courtstwo considerations which lie as the basis for attorney discipline." Louisiana Bar Ass'n v. Edwards, 387 So.2d 1137 at 1139 (La., 1980).
While Kramer attempted to explain and justify the conduct for which he was convicted, this does not necessarily indicate lack of remorse. There is considerable evidence that Kramer's crimes were motivated solely by his devotion to the Family Health Foundation. The commissioner did not weigh this aspect of the matter, but benevolent motives constitute a mitigating factor. Lack of evil intent does not justify or excuse the offenses but it reduces the degree of moral culpability.
Kramer's crimes were unconnected with the practice of law. See Louisiana State Bar Ass'n v. Heymann, 405 So.2d 826 (La., 1981). While disbarment may be an appropriate discipline for any serious crime, the mitigating factors here weigh against that sanction. Compare Louisiana State Bar Ass'n v. Bensabat, 378 So.2d 380 (La., 1979). The commissioner recommended suspension from the practice of law for two years dating from the hearing on March 5, 1982, thus prohibiting Kramer from practicing law until March 5, 1984. Such a suspension would terminate seven years after Kramer's conviction was final. This penalty is too severe. The practice of law was not involved in Kramer's crimes; his motive was not personal gain; no individuals were injured; and no civil claim for restitution has been made. Compare Louisiana State Bar Ass'n v. Weinstein, 416 So.2d 62 (La., 1982) and Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La., 1981).
The purpose of disciplinary action is not to compound a miscreant's punishment. Louisiana State Bar Ass'n v. Miller, 382 So.2d 911 (La., 1980); Louisiana State Bar Ass'n v. McSween, 347 So.2d 1118 (La., 1977); Louisiana State Bar Ass'n v. Summers, 379 So.2d 1065 (La., 1980). However, the felonies committed by Kramer merit sanction to preserve the integrity and dignity of the bar. A three year suspension is appropriate, but it will be made retroactive to the date of his initial suspension, September 18, 1980.
IT IS THEREFORE ORDERED that Oscar E. Kramer, Jr., be suspended from the practice of law for three years commencing with his initial suspension and that he pay all costs of these proceedings.
NOTES
[1] It is argued that the diversion of funds by Kramer and Beasley was not a crime until the Foundation was transferred from state to federal control.