500 So.2d 360 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
A. Wayne STEWART.
No. 86-B-0226.
Supreme Court of Louisiana.
January 12, 1987.
*361 Thomas O. Collins, Jr., G. Fred Ours, Gerald F. Thomas, Roland J. Achee, Robert J. Boudreau, Robert M. Contois, Frank J. Gremillion, Carrick R. Inabnett, Harvey Lewis, Alfred S. Landry, Philippi P. St. Pe', for applicant.
A. Wayne Stewart, for respondent.

DISCIPLINARY PROCEEDING
WATSON, Justice.
In this disciplinary proceeding by the Louisiana State Bar Association against one of its members, A. Wayne Stewart, the Supreme Court of Louisiana has original jurisdiction.[1]
By his own admission, attorney Stewart is guilty of grave misconduct. To obtain a larger verdict, he induced three clients to give false testimony during the trial of a civil case, which constitutes subornation of perjury.[2]
While suffering from severe alcoholism, Stewart tried a case in which liability had been resolved by summary judgment, and quantum was the only issue. To increase quantum, Stewart suggested perjury to the two plaintiffs and another client. While the case was under advisement by the presiding judge, Jack T. Marionneaux, attorney Stewart voluntarily sought treatment at the Baton Rouge General Hospital chemical dependency unit. After undergoing treatment for approximately thirty days, he requested a private meeting with opposing counsel, Gerald Thomas Arbour, and disclosed the perjury. The matter was then presented to the presiding judge and subsequently to the Louisiana State Bar Association. The case itself was settled on an amicable basis. There have been no criminal proceedings against Stewart.
At the investigatory hearing by the Committee on Professional Responsibility of the Louisiana State Bar Association, Stewart admitted his guilt with full knowledge of the possible consequences.[3]
According to Arbour's testimony, Stewart often showed indications of drinking during his conduct of this case. Arbour's client was aware that one of Stewart's clients had a criminal history and it would *362 have been easy for Stewart to blame any perjury on that party. According to the testimony of Arbour, his senior partner, Edward F. Glusman, and Judge Marionneaux, Stewart indicated extreme contrition throughout his confessional period. Judge Marionneaux stated that he had no knowledge of any subsequent problems by Stewart with alcohol. All agreed that the perjury would not have been revealed without Stewart's self-incrimination.
Everett E. Jackson of the Silkworth Center at Parkland Hospital in Baton Rouge testified that he is an alcohol and drug counsellor and has been involved in that field since July of 1975. He is certified in the State of Iowa and is working toward certification in Louisiana. Stewart entered the Silkworth Center for treatment on August 30, 1984, and was discharged on September 27, 1984. Jackson was his primary counsellor. According to Jackson, Stewart was in the final or chronic phase of alcoholism and also had some physical problems. Stewart's chronic alcoholism had made him incapable of making proper decisions, too weakened to follow his moral code and value system. Stewart had a low self image and confessed procuring the perjured testimony, a fact about which he felt very guilty.
After his discharge, Stewart was involved with his wife in an after-care program through December or January. After completion of his out patient treatment in January of 1985, Stewart became involved in the Denham Springs A.A. Program and goes to see Jackson every couple of months. Stewart told Jackson that he had abstained from alcohol for over a year, and Stewart has referred several people to the center. Complete recovery after treatment at the unit runs between thirty-five and forty percent.
Judge Samuel T. Rowe, who had known Stewart since 1977, was well aware of Stewart's drinking problem. Since the problem has been arrested, Wayne Stewart has returned to the character he had when he first started practicing law: he now appears timely in court, is responsible, does public service, pro bono, work, and is one of the superior lawyers in the community. Judge Rowe said that his opinion of Stewart's present condition is shared by the other members of the bench and bar in the community. In Judge Rowe's opinion, Stewart has made every effort to rehabilitate himself.
Calvin C. Fayard, a friend of Stewart's since grammar school, employed him as a clerk while Stewart was attending LSU Law School. In Fayard's opinion, there was no question that Stewart developed a severe drinking problem which interfered with the performance of his duties as a lawyer, his obligations to his family and his responsibilities to clients and fellow members of the profession. Prior to his rehabilitation, he would appear in court under the influence of alcohol or else would fail to come to court and call with flimsy excuses.
Fayard, together with Stewart's family, encouraged Stewart to admit himself to the chemical dependency treatment unit. Since his discharge, there has been a marked change in Stewart, whom Fayard, a past president of the local bar association, now regards as an asset to the bar.
Sallye Barfield Stewart, respondent's wife of thirteen years, was aware of her husband's severe drinking problem. On the day of his discharge, when she picked him up at the treatment center, he asked her to schedule an appointment with Arbour to confess the subornation of perjury. They discussed the possibility of his disbarment and/or incarceration as a result. Although she was not specifically aware of the perjury prior to that time, her husband had told her that he had hoped this particular case would bring in enough money to relieve some of the pressures which he felt encouraged his drinking problem.
Stewart said his alcoholism developed gradually over a period of years and developed to the point where he had to have a morning drink to function. He admitted *363 trying cases while drunk and could not even refrain from drinking on the day of his daughter's graduation. At one time, he contemplated suicide. When the case involving the perjury came to his office, there was no question of liability, but there was an insignificant loss of future income. He had the two plaintiffs and another client commit perjury about their employment to increase the damages and went through the trial in an alcoholic state.
On the date of the hearing, September 30, 1985, Stewart testified that he had not had a drink since leaving the treatment center and is involved in Alcoholics Anonymous and helping other alcoholics. Stewart erroneously thought that the pressures of practicing law caused him to drink and suborned the perjury to make money so that he could quit practicing law. Afterward, he decided a full confession of his wrong doing was necessary. Stewart, now thirty-nine, was admitted to the practice of law in 1978 and estimated he had had a severe drinking problem for three years before he admitted himself to the treatment center.
The appropriate penalty for perjury and suborning perjury is generally disbarment. Louisiana State Bar Ass'n v. Russell, 388 So.2d 788 (La., 1980); Louisiana State Bar Association v. Thierry, 366 So.2d 1305 (La., 1978); Louisiana State Bar Ass'n v. Gremillion, 320 So.2d 171 (La., 1975). No more serious offense can be committed against our system of justice, which cannot function without truthful sworn testimony. By a majority vote, the Committee on Professional Responsibility of the Louisiana State Bar Association has recommended Stewart's disbarment.[4]
Despite the gravity of Stewart's offense, consideration of mitigating circumstances is nonetheless appropriate. Louisiana State Bar Ass'n v. Meyer, 478 So.2d 1211 (La., 1985); Louisiana State Bar Association v. Vesich, 476 So.2d 811 (La., 1985). Weighing most strongly in Stewart's favor is the fact that he came forward and disclosed his guilt with full knowledge of the possible consequences. His revelation was made to opposing counsel and the presiding judge before a decision was rendered in the case, foreclosing any financial injury to third parties. See Louisiana State Bar Ass'n v. Porobil, 444 So.2d 613 (La., 1984); Louisiana State Bar Ass'n v. Ruiz, 261 La. 433, 259 So.2d 903 (1972). It is conceded that his crime would otherwise never have been known.
There has been no criminal conviction. There has never been any other disciplinary action against Stewart. The Committee on Professional Responsibility did not have to carry its burden of proof on behalf of the bar association,[5] because Stewart admitted his guilt.
Stewart's voluntary disclosure of his misconduct is a strong mitigating factor. A penalty so severe as to discourage future admissions of culpability by members of the bar would not serve the best interests of the public, the bar, or the bench. The situation would, of course, be different if Stewart had admitted his guilt under duress with a promise of leniency or under the threat of exposure. His voluntary waiver of his constitutional privilege[6] and his candid testimony before the Committee, while not excusing his grave misconduct, must be given consideration. To impose the sanction appropriate for one who is convicted of perjury on an attorney who *364 has come forward, prevented any damage to other parties from the perjured testimony, and has otherwise tried to atone would be a sad commentary on the system. Leniency is appropriate when it encourages attorneys to admit their transgressions.
An appropriate penalty will protect the courts and the public from unprofessional and illegal conduct by its deterrent effect. Louisiana State Bar Association v. Cryer, 441 So.2d 734 (La., 1983); Louisiana State Bar Association v. Kramer, 420 So.2d 1110 (La., 1982); Louisiana State Bar Association v. Summers, 379 So.2d 1065 (La., 1980); Louisiana State Bar Association v. Jones, 372 So.2d 1186 (La., 1979), cert. den. 444 U.S. 1073, 100 S.Ct. 1017, 62 L.Ed.2d 754 (1980).
Stewart's crime must be weighed against his record since his rehabilitation, his medical problems, the lack of injury to third parties, his contrition, and his voluntary confession of guilt. Despite the gravity of the offense, the circumstances warrant a lesser sanction than disbarment. Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La., 1986); Louisiana State Bar Association v. Vesich, 476 So.2d 811 (La., 1985); Louisiana State Bar Ass'n v. Mundy, 423 So.2d 1126 (La., 1982). Disbarment is the most extreme penalty available to the Bar Association and should be reserved for those cases without strong mitigating factors. Compare Louisiana State Bar Ass'n v. Alker, 491 So.2d 1328 (La., 1986).

DECREE
For the reasons assigned,
IT IS ORDERED, ADJUDGED AND DECREED that A. Wayne Stewart be suspended from the practice of law for a period of eighteen months, commencing from the date this judgment is final. All costs of these proceedings are taxed against respondent Stewart.
SUSPENSION ORDERED.
COLE, J., concurs. I believe, due to the unusual circumstances of this case, a one year suspension is adequate punishment.
NOTES
[1] LSA-Const. 1974, Art. V, § 5(B).
[2] LSA-R.S. 14:123 provides:

"Perjury is the intentional making of a false written or oral statement in, or for use in, a judicial proceeding, or any proceeding before a board or official, wherein such board or official is authorized to take testimony. In order to constitute perjury the false statement must be made under sanction of an oath or an equivalent affirmation, and must relate to matter material to the issue or question in controversy.
"It is a necessary element of the offense that the accused knew the statement to be false; but an unqualified statement of that which one does not know or definitely believe to be true is equivalent to a statement of that which he knows to be false. * * *"
Also see, LSA-R.S. 14:24 which provides:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
[3] The charges were as follows:

"That you have suborned the perjury of three witnesses. That you have engaged in illegal conduct involving moral turpitude. That you have engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. That you have engaged in conduct that is prejudicial to the administration of justice. That you have engaged in conduct that adversely reflects on your fitness to practice law. That you have knowingly used perjured testimony or false evidence. That you have knowingly made a false statement of fact. That you have participated in the creation or preservation of evidence when you knew said evidence was false. That you have counselled or assisted your client in conduct that you knew was illegal or fraudulant [sic]. That the above conduct is in violation of Disciplinary Rules DR 7-101 (A) (4) (5) (6) (7) and DR 1-102 (A) (1) (3) (4) (5) (6) of the Code of Professional Responsibility of the Louisiana State Bar Association." (Exhibit C-1)
[4] The Commissioner's report, dated August 28, 1986, does not make a disciplinary recommendation but expresses uncertainty about Stewart's "present condition". However, the Committee, on June 26, 1986, waived the right to present further evidence, implying that Stewart's alcoholism has remained in remission.
[5] Louisiana State Bar Association v. Williams, 479 So.2d 329 (La., 1985); Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La., 1984); Louisiana State Bar Ass'n v. Mitchell, 375 So.2d 1350 (La., 1979). See In re Cummings, 201 La. 439, 9 So.2d 614 (1942).
[6] See Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957) and Cohen v. Hurley, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961).