504 So.2d 822 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Richard A. THALHEIM.
No. 86-B-0822.
Supreme Court of Louisiana.
April 6, 1987.
On Rehearing June 18, 1987.
*823 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, for applicant.
Richard A. Thalheim, Thibodaux, Julian R. Murray, Jr., New Orleans, for respondent.
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted a proceeding against Richard A. Thalheim, a member of said association. Prior to the commencement of this proceeding, the committee had conducted investigations of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the proceeding, which involved five specifications of misconduct, was sent to respondent by certified mail under date of October 7, 1985.
The committee held a formal investigative hearing on four of the five specifications on December 12, 1985, as provided in article 15, section 3(b) of the articles of incorporation. The committee specifically dismissed specification number 5. Respondent was present and represented by Julian R. Murray, Jr. at the hearing. Based upon the evidence adduced at the hearing, the committee, by a majority vote, was of the opinion that respondent was guilty of a violation of the laws of this state relating to the professional conduct of lawyers of sufficient gravity as to demonstrate a lack of moral fitness for the practice of law. Specifically, the committee found that the evidence supported the charges set forth in specifications 1, 2 and 3. On April 30, 1986, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent answered the petition. The court, by order, then appointed Mr. Ben Louis Day as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
A hearing before the commissioner was held on September 25, 1986. Respondent was present at the hearing and was represented by counsel. The committee introduced in evidence the entire record of disciplinary proceedings, including the original pleadings filed into the record and the transcripts and original exhibits from the committee hearings, whereupon the committee rested its case. Respondent did not contest the factual allegations. However, he presented evidence of mitigating circumstances. Upon termination of the hearing, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law and recommended that we impose upon respondent a one-year suspension from the practice of law. The committee filed its concurrence in the commissioner's findings of fact and conclusions of law.[1] Respondent filed an exception to the report of the commissioner *824 insofar as its recommendation of a one-year suspension from the practice of law. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).
The following allegations of misconduct have been made against respondent.
Specification No. 1 alleged:
That in your capacity as Attorney at Law, you were retained to represent one Charles E. Jones in a Workmen's Compensation claim. That said claim was settled on or about February 1, 1985, drafts were issued and received by you shortly thereafter. That two drafts were issued, one made payable to the Terrebonne General Hospital in the amount of $4,506.40, and the second draft in the amount of $49,493.60 made payable to Charles Edward Jones and his attorney, Richard Thalheim, Jr. That on or about February the 5th of 1985, you did deposit the draft in the amount of $49,493.60 into one of your bank accounts. That in spite of the demands of your client, you did fail, neglect, and refuse to disburse funds to the client until April 1, 1985. That you have failed to promptly pay or deliver to the client the client's funds which the client was entitled to receive, that you have engaged in conduct that is prejudicial to the administration of justice. That you have engaged in conduct that adversely reflects on your fitness to practice law in violation of Disciplinary Rules DR 9-102(B)(4) [[2]] and DR 1-102(A)(5)(6)[[3]] of the Code of Professional *825 Responsibility of the Louisiana State Bar Association.
Specification No. 2 alleged:
That in connection with the above detailed settlement of Charles E. Jones, you did on or about February 5th, 1985, deposit the draft in the amount of $49,493.60 into an account numbered XX-XXXXXXXX-XX with the First Financial Bank. That said account was not an attorney's trust or escrow account, and did, in fact, contain funds belonging both to yourself and to clients. That the client did not receive any of his funds until April 1, 1984, and that you have comingled [sic] and converted funds in violation of Disciplinary Rules DR 9-102 [[4]] and DR 1-102 [[5]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specification No. 3 alleged:
That on or about April the 1st, 1985, funds were distributed by you in the settlement of Charles E. Jones Workmen's Compensation case. That said settlement was for the total amount of $54,000.00. That you did charge an attorney's fee of $7,400.00 which is an excessive fee under the Workmen's Compensation statute and is in violation of Disciplinary Rules DR 2-106(A) [[6]] and DR 1-102(A)(5)(6) [[7]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
The facts as set forth in the above specifications are generally not in dispute. Evidence submitted at the investigative hearing established that respondent was retained by Mr. Charles E. Jones to represent his interests in a worker's compensation claim. On February 5, 1985, judicial approval was obtained for settlement of Jones' claim and respondent received and deposited a settlement draft in the amount of $49,493.60 into a checking account used in connection with his law practice. He then advised Jones that it would take approximately ten days for the draft to clear. The checking account into which the settlement proceeds were deposited was not a trust account and in fact was an account containing client and personal funds. The account was used, among other things, to pay the firm's general operating expenses as well as at least some renovation costs of a building into which respondent ultimately moved his practice. During the time in question, respondent did not have a specific account which acted as a trust or escrow account. He operated his law practice through several checking accounts in which running balances were not kept.
On March 18, the bar association received a complaint from Jones attached to which was his South Central Bell telephone bill. It disclosed that Jones called respondent's office 23 times on various dates between February 15 and March 13, 1985. These calls were made regarding disbursement of his settlement. Respondent received notice of Jones' complaint from the association on March 25. Respondent then borrowed $35,100.00 from his mother and deposited those funds into his operating account on April 1, 1985 in order to make the Jones disbursement of $24,238.43, representing his portion of the settlement. Immediately prior to that disbursement, respondent's *826 combined office bank balances totaled only $7,566.79.
The attorney fee which respondent charged Jones in connection with the settlement exceeded by $1,000.00 the statutory fee. Respondent ascribed this error to the inexperience of Mrs. Thalheim, then the employee in charge of preparing such disbursements. The fee question was raised with respondent on or about June 7, 1985 by letter from counsel for the committee. On July 11, 1985, respondent issued a check to Jones for the full fee differential, plus interest.
Respondent presented the following evidence in mitigation of his conduct. He alleges that he was ignorant of the Disciplinary Rules requirement that funds belonging to clients be maintained in a separate clients' trust account. At the time respondent attended Harvard Law School, he claims not to have taken an ethics course as it was not a requirement for graduation from the law school.
Respondent further urges that at the time in question, he was singlehandedly managing over 450 active client files assisted only by a secretary and a bookkeeper. Realizing he needed additional staff and a larger office location, he began remodeling a building to provide new office space in November 1984 and hired an attorney to become associated with him in January 1985. Respondent concluded a lengthy trial in federal court on January 18 in which he secured a 1.6 million dollar judgment for another client. On January 19, he was married and left the country on his honeymoon, returning on January 29. On February 2, his new associate left the office for a week to go on a previously arranged vacation and respondent was faced with numerous post trial motions in connection with the recently concluded trial. It was during this time that the Jones settlement was finalized (February 5). Renovations continued on his new office until the office was moved around March 1. Respondent contends that his delay in concluding the Jones settlement disbursement was a result of the aforementioned competing demands and that as soon as he received notice from the committee of Jones' complaint to the bar association, he made the necessary deposit in his office account and disbursed Jones' settlement within a week. Respondent further claims that Jones' funds were never at risk of loss because he had personal liquid assets available at the time in excess of $150,000.00 in the form of a stock portfolio, evidence of which was introduced at the hearing. Respondent claims to have borrowed funds from his mother solely in an effort to further expedite the disbursement to Jones. Finally, respondent claims that the overcharge in attorney fees described in Specification No. 3 was caused by a misapplication of the statutory formula and that upon discovery of the error by the committee, a prompt refund including interest was made.
We find that the record fully supports the conclusion that respondent failed to promptly deliver a client's funds to him in violation of DR 9-102(B)(4). After repeated demands from his client, he delayed the disbursement of the client's settlement funds without valid reason for approximately six weeks. Respondent also commingled and converted his client's funds in violation of DR 9-102 by depositing his client's funds into an operating account containing personal funds and then allowing the balance in the account ($7,566.79) to fall below the amount owed to the client ($24,238.43). Further, the evidence is uncontroverted that respondent charged an illegal attorney fee in connection with the representation of his client's worker's compensation claim. The above conduct constitutes a violation of DR 1-102. The fact that respondent did not take an ethics course in law school and was ignorant of the Disciplinary Rules does little to mitigate his conduct. Ignorance of the Disciplinary Rules which set forth the minimum level of conduct below which no lawyer may fall without being subject to disciplinary action is no excuse. Additionally, while lawyers can appreciate the conflicting pressures and competing demands of an active practice, nevertheless, certain deadlines must be met, minimum requirements observed, and obligations fulfilled.
The purpose of lawyer disciplinary proceedings is not primarily to punish *827 the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1984).
Having found respondent guilty of three specifications of misconduct, we consider that disciplinary action is warranted. Respondent was found guilty of neglecting to promptly deliver a client's funds to him, commingling and converting those funds, and charging the client an illegal attorney fee.
Respondent's claims in mitigation of competing professional and personal demands together with his lack of organization tend to support his claim that the violations of the Disciplinary Rules were the result of his negligence as opposed to intentional wrongful conduct. We do not believe that respondent intended to permanently deprive his client, Jones, of funds belonging to him. While the violation of charging a client an illegal fee seems to have been inadvertent, we consider that respondent's practice of commingling client funds with personal funds combined with his failure to maintain bank account balances resulting in the conversion of his client's funds borders on gross negligence. However, the client was deprived of his funds for only a relatively short period of time. Respondent paid the client in full immediately upon notification from the committee of the client's complaint. Further, the client's funds were apparently never at risk of loss as respondent had more than adequate personal funds with which to pay the client.
Respondent urges in the event this court considers a public reprimand too light a sanction, that it impose a suspension and then suspend the imposition of that sanction conditioned upon the attorney completing certain hours of public service work and/or paying a certain amount of money to the Client's Security Fund. He believes that such a remedy would act as a deterrent to the wrongdoer and would also better serve the public. This court has not to date imposed a sanction such as that advanced by respondent. Further, prior to the imposition of such an alternative sanction, we believe that a more extensive study is needed as to the rehabilitative value and the means of implementation of these sanctions. Therefore, we decline to impose such a sanction in this case.
Because it appears that respondent's client suffered no permanent loss, was ultimately paid in full including interest, and had protection throughout by the independent resources of respondent, we find that a six-month suspension from the practice of law is an appropriate disciplinary action in this matter. See Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La. 1986).

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Richard A. Thalheim be suspended from the practice of law in Louisiana for six months from the date of finality of this judgment. Respondent is to bear all costs of this proceeding.
DIXON, C.J., dissents in part with reason.
DIXON, Chief Justice (dissenting).
I respectfully dissent from the penalty imposed in this case, believing justice would be better served if we accepted respondent's suggestion that we suspend any penalty except a public reprimand upon his payment of a substantial fine to the Client's Security Fund.

ON REHEARING
PER CURIAM
We granted a rehearing in this matter to reconsider the penalty imposed upon respondent, Richard A. Thalheim. Considering respondent's conduct was negligent rather than intentional, his client was deprived of his funds for a relatively short period *828 of time, and these funds were apparently never at risk of loss, we believe that a six-month suspension from the practice of law is too severe a penalty. Rather, we find that suspension from the practice of law for a period of three months is a more appropriate disciplinary action in this matter.

DECREE
For the reasons assigned, it is ordered that Richard A. Thalheim be suspended from the practice of law in the State of Louisiana for a period of three months. All costs of these proceedings are cast against respondent.
NOTES
[1] In brief to this court, the committee concurred with the commissioner's recommendation of a one-year suspension. However, the committee recommends that respondent's readmission to practice law be further conditioned upon his obtaining a passing score on the Multistate Professional Responsibility Examination.
[2] DR 9-102 provides:

A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
1. Funds reasonably sufficient to pay bank charges may be deposited therein.
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
C. A Lawyer may elect to create and maintain an interest-bearing trust account for clients' funds which are nominal in amount or to be held for a short period of time in compliance with the following provisions:
1. No earnings from such an account shall be made available to a lawyer or firm.
2. The account shall include all clients' funds which are nominal in amount or to be held for a short period of time.
3. Any interest-bearing trust account may be established with any bank or savings and loan association or credit union authorized by federal or state law to do business in Louisiana and insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation or the National Credit Union Administration. Funds in each interest-bearing trust account shall be subject to withdrawal upon request and without delay.
4. The rate of interest payable on any interest-bearing trust account shall not be less than the rate paid by the depository institution to regular, nonlawyer depositors.
5. Lawyers or law firms electing to deposit client funds in a trust savings account shall direct the depository institution:
a. To remit interest or dividends, net of any service charges or fees, on the average monthly balance in the account, or as otherwise computed in accordance with an institution's standard accounting practice, at least quarterly, to the Louisiana Bar Foundation, Inc.;
b. To transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm for whom the remittance is sent and the rate of interest applied; and
c. To transmit to the depositing lawyer or law firm at the same time a report showing the amount paid to the Foundation, the rate of interest applied, and the average account balance of the period for which the report is made.
[3] DR 1-102 provides:

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[4] See footnote 2.
[5] See footnote 3.
[6] DR 2-106(A) provides:

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
[7] See footnote 3.