523 So.2d 838 (1988)
LOUISIANA STATE BAR ASSOCIATION
v.
Vincent A. MARINELLO.
No. 87-B-1983.
Supreme Court of Louisiana.
April 11, 1988.
*839 Vincent A. Marinello, Milton P. Masinter, New Orleans, for applicant.
Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe, Metairie, Trevor G. Bryan, Elizabeth A. Alston, New Orleans, Christine Lipsey, Baton Rouge, for respondent.
COLE, Justice.
This is a disciplinary proceeding by the Louisiana State Bar Association, through its Committee on Professional Responsibility, against one of its members, Vincent A. Marinello. Marinello is charged with specifications of misconduct arising out of his representation of two different clients. The only issue in this matter is the appropriate discipline to be imposed.

PROCEDURAL HISTORY
This is one of two cases decided this day, the other being Louisiana State Bar Association v. Scariano, 523 So.2d 834 (La. 1988), in which the parties have streamlined by agreement the proceedings below. We encourage the Committee to utilize this practice whenever feasible in order to simplify and expedite these matters.
Five specifications of misconduct were originally sent to Marinello in February of 1987. After conducting an investigatory hearing, the Committee was of the unanimous opinion that Marinello was guilty of the misconduct described in four of the specifications. Marinello then filed a Petition for Voluntary Suspension on August 31, 1987. In the petition, Marinello admitted the facts alleged in the four specifications were essentially true and correct, admitted his guilt, and outlined the mitigating circumstances present. He then requested to be suspended by the Court from the practice of law for a period of nine months. The Committee recommended approval of the petition.
On November 13, 1987 the petition for suspension by consent was denied by this court in a per curiam opinion. Louisiana State Bar Association v. Marinello, 514 So.2d 447 (La.1987). However, we suggested the Bar Association resubmit the matter by filing a disciplinary action in which the parties could waive the appointment of a Commissioner. The parties were invited to file the transcript of the investigatory hearing and jointly submit any other evidence pertaining to the misconduct or any aggravating and mitigating factors.
Although we welcome recommendations of disciplinary sanctions, we rejected the "plea bargain" approach because the sole authority to determine the appropriate penalty must remain with this court. By retaining this authority and independently reviewing the record, we are able to fashion a sanction consistent with the purposes of disciplinary proceedings. It is important that we insure rehabilitation and safeguard the public.
Following our denial of suspension by consent, a petition for disciplinary action was filed by the Bar Association on January 8, 1988. The parties then filed a Joint Motion to Proceed Without Appointment of Commissioner and Waiver of Applicable Rights and submitted the matter on the record developed at the Committee hearing without oral argument. The Joint Motion also contained a request that we decide this matter by full opinion. While we do so, whether or nor we treat this type case in a summary fashion remains within our discretion after considering the complexity of each matter.

FACTS
Marinello has admitted his guilt. All that remains for this court is to review the facts and circumstances of each complaint in order to fashion the appropriate discipline.
In the first matter, specifications of misconduct were brought arising out of Marinello's representation of Norman L. Brown. Marinello is charged with two counts of commingling and one count of conversion *840 of client funds; and one count of failure to render a proper accounting and promptly pay these funds. Violations at issue involve Disciplinary Rules 1-102 and 9-102 of the Code of Professional Responsibility. At the start of the investigatory hearing Marinello entered into a stipulation of the facts forming the basis for these allegations of misconduct.[1]
Marinello was retained by Norman L. Brown to represent him in a personal injury claim. The case was settled and Marinello received the release forms and bank drafts in February of 1984. The release forms were signed and the drafts were deposited on May 8, 1984. The delay was apparently due to the fact that Brown had been incarcerated in Orleans Parish Prison since August of 1983 and new criminal charges were pending. The funds were deposited in Marinello's Attorney at Law account.
With regard to this account Marinello explained that when he started his practice in 1963 this was the only account he opened because he was not aware a trust account *841 was needed. The account was used to pay all expenses related to his practice and to hold client funds. He did not open a trust account until this complaint was filed. He candidly admitted that he occasionally used this account to pay personal expenses when he did not have the checkbook to his personal account with him.
Although Marinello had advanced funds on Brown's behalf to family and creditors, and certain doctor bills were still outstanding, the balance in this account fell below the amount undisputably due Brown shortly after the funds were deposited. Brown did not ask for these funds or a formal accounting immediately. Instead, he instructed Marinello to use the funds to pay his bills and arrange for a criminal attorney to handle the pending charges. Marinello did as requested and also continued to send money to Brown's sister.
After repeated requests, Marinello sent an itemized statement of Brown's account to him on May 17, 1985. This statement showed an overpayment to Brown of $986.37. Brown was dissatisfied with this accounting, specifically with a charge of $2,775.00 for Dr. Ombaka's bill and a $200.00 charge for appearances made in criminal court by Milton Masinter. Brown tried to contact Marinello several times in order to resolve the matter but Marinello did not respond. Apparently, there was some difficulty in communicating because Brown had been transferred to Angola. Brown eventually complained to the Bar Association.
Marinello testified once he received the Bar Association's letter in June of 1986 concerning the matter he reviewed his file, and determined Dr. Ombaka's bill had been paid by Brown's insurance company. After talking to Brown he agreed to waive Masinter's fee and charges for x-rays for which he could no longer find receipts. In addition to the above items, he also agreed to pay Brown $300.00 in interest. These funds were finally paid to Brown's sister in August of 1986.
Marinello testified the error concerning Dr. Ombaka's bill was a result of oversight. He never intended to keep the funds. Although his bank balance dropped occasionally below the amount owed, he felt Brown's funds were never in real danger because he had $65,000 in personal savings available which he had invested in Treasury bills and municipal bonds. He admitted his office procedures were lax and that he had since made the necessary improvements.
The remaining specification of misconduct arises out of Marinello's representation of Curtis Barracco and also involves commingling of client funds. A second specification of misconduct alleging neglect of a legal matter was dropped by the Committee after the investigatory hearing. As with the Brown complaint, Marinello stipulated to the facts underlying the allegation and admitted his guilt.[2]
Marinello represented Barracco in a personal injury suit which was settled for $4,900.00 sometime in June or July of 1978. The dates are unclear because neither the bank nor Marinello kept records of that vintage. Marinello testified that to the best of memory he deposited the draft into the same Attorney at Law account described above and immediately gave Barracco a check for $200.00. Shortly thereafter, Marinello gave his client a check for the balance of the client's portion of the settlement.

DISCIPLINE
In its brief to the court the Committee was of the opinion that Marinello's conduct did not involve fraud, deceit or misrepresentation. After reviewing the testimony taken at the hearing we agree with that *842 conclusion. In Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La. 1986), we established guidelines for imposing disciplinary sanctions in cases involving the commingling and conversion of client funds. In particular, we stated:
A suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree. No other fraudulent acts are committed in connection with the violation of the disciplinary rule. There is no serious harm or threat of harm to the client. Full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made.
A reprimand may be appropriate in a case where there is a minor violation of DR 9-102, but there is no conversion or harm to the client. (Citations omitted.)
Id. at 123.
This case is similar in many respects to Louisiana State Bar Association v. Thalheim, 504 So.2d 822 (La.1987). In that matter Thalheim was found guilty of commingling and conversion, neglecting to promptly deliver client funds, and charging the client an illegal fee. Thalheim was not aware of the trust account requirement and deposited client funds in an office operating account. The balance of that account fell below what was due the client. Thalheim did not intend to permanently deprive the client of his funds and his misconduct was the result of negligence. The client suffered no permanent loss, he was deprived of his funds for a relatively short period of time, the client's funds were protected by the independent funds of his attorney, and full restitution with interest was made. Under these circumstances we imposed a three month suspension.
In Louisiana State Bar Association v. Hopkins, 447 So.2d 464 (La.1984), the attorney failed to maintain an accurate accounting of a client's settlement funds, failed to promptly pay or deliver the client's portion of the settlement funds, and commingled and converted the client's funds to his own use. The client received full repayment of all funds four months after settlement and nine days after the attorney was notified of the complaint. The attorney cooperated fully with the Committee during its investigation of the matter. These circumstances, coupled with the fact this was the first disciplinary action taken against the attorney, resulted in him receiving a one year suspension from the practice of law.
The purpose of disciplinary proceedings is to protect the public and the administration of justice, and to maintain the high standards of professional conduct embodied in the Code of Professional Responsibility. The discipline to be imposed in a particular proceeding depends upon the seriousness and circumstances of the offense fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. Louisiana State Bar Association v. Larre', 457 So.2d 649 (La.1984). In evaluating the aggravating and mitigating factors of this case we are guided in a general fashion by the ABA's Standards for Imposing Lawyer Sanctions (1986) and our own jurisprudence.
In discussing the aggravating factors we first note the fact that Marinello was unaware of the trust account requirement does not mitigate his conduct. As we stated in Thalheim, "Ignorance of the Disciplinary Rules which set forth the minimum level of conduct below which no lawyer may fall without being subject to disciplinary action is no excuse." Thalheim, 504 So.2d at 826. In fact, the length of time Marinello went without the trust account suggests a pattern of misconduct which is a factor which may be considered in aggravation. Standards For Imposing Lawyer Sanction, § 9.22(c) (1986). The other aggravating factor is the significant length of time which passed before Brown finally received the funds and accounting properly due. Marinello disregarded Brown's requests until the matter was brought to the attention of the Bar Association. Considering the length of time which passed we can reasonably infer that Brown or his family suffered some injury in spite of his incarceration.
*843 The factors mitigating against the seriousness of these offenses are numerous. Importantly, there was no intent on Marinello's part to permanently deprive Brown of his funds. His conduct does not involve fraud, deceit or misrepresentation which would otherwise adversely reflect on his fitness to practice law. His conduct was merely negligent. Brown received full restitution with interest prior to the investigatory hearing and Marinello expressed his remorse to his client. Marinello cooperated fully with the Committee's investigation and admitted his guilt. This resulted in significant judicial economy when he waived his rights attendant with a Commissioner's hearing and oral argument before this court.
Although there have been a total of eleven complaints lodged against him with the Bar Association in his lengthy career, only these matters resulted in the institution of disciplinary proceedings. According to the evidence presented, Brown's funds were never in any real danger since they were adequately protected with personal savings. As regards the Barracco complaint, we note the commingling did not result in any harm to the client and that this complaint is now nearly ten years old.
Finally, Marinello has already taken the steps necessary to prevent future misconduct of this sort. He has established a trust account for client funds and improved his accounting and office practices. These steps should be sufficient to protect the public.
When the parties originally submitted the Petition for Voluntary Suspension in August of 1987, they agreed on a nine month suspension. In its brief, the Bar Association suggests this is the appropriate penalty. Marinello now maintains a reprimand or, in the alternative, a three month suspension is appropriate. Since Marinello is guilty of conversion, a reprimand is inappropriate under the Hinrichs guidelines. Hinrichs, 486 So.2d at 123.
After considering the nature of the offenses of which Marinello is guilty in light of the substantial mitigating factors, we find a nine month suspension from the practice of law is appropriate in this matter.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Vincent A. Marinello be suspended from the practice of law in Louisiana for nine months from the date of finality of this judgment. Respondent is to bear all costs of this proceeding.
NOTES
[1] Specification 1

That in your capacity as Attorney at Law, you were engaged to represent one Norman L. Brown in a matter involving injury. That in connection with that matter, on or about February 17, 1984, you did receive a check from Lloyds Adjusting Service payable to the order of Norman Brown and his attorney, Vincent Marinello, in the amount of $5,000.00. That in connection with that matter, on or about February 24, 1984, you did receive a check from Old Hickory Casualty Insurance Company payable to the order of Norman Brown and his attorney, Vincent Marinello, in the sum of $5,000.00. That the total of said funds received was $10,000.00. That releases were not signed and the drafts were not deposited until on or about May 8th, 1984. That on or about May 8, 1984, you did deposit the $10,000.00 settlement proceeds into an account at the First National Bank of Commerce, account number XXXXXXXX which was the succeeder institution to the Bank of New Orleans, wherein you had an account number XXXXXXX. That said account was entitled Vincent Anthony Marinello, Attorney at Law. That said account was not an attorney's trust account and, in truth and in fact, upon deposit of the $10,000.00 settlement proceeds, you have commingled funds belonging to your client with your own funds.
Specification 2
In connection with the above complaint and in connection with your representation of Norman Brown and in connection with the handling of the funds deposited into your bank account, all as detailed in Specification Number 1 above, it is alleged as follows:
That prior to the deposit of the settlement proceeds on or about May 8, 1984, you had advanced to your client for necessary and proper living expenses the following funds: $426.32 on or about April 12, 1983; $50.00 on or about June 15, 1983; $140.00 on or about July 12, 1983; $50.00 on or about October 24, 1983. That at the time of the deposit of the settlement proceeds on or about May 8, 1984, you had incurred costs in this matter as follows: Dr. Ombaka, $75.00 on or about February 28, 1983; Dr. Morris, $730.00 on or about May 20, 1983; court costs in the amount of $85.00 on or about January 31, 1984. That out of the settlement proceeds, you were entitled to an attorney's fee of $3,335.00. That after the deduction of the above detailed advances, costs, and attorney's fees, the client's portion of the settlement was $5,108.68. That on or about May 11, 1984, you did disburse the sum of $100.00 to the client and on or about May 15, 1984, you did disburse on behalf of your client the sum of $1500.00 to an attorney named Malcolm Mundy for payment of attorney's fees of your client in a criminal matter. That on or about August 17, 1984, you did disburse the sum of $1,000.00 to your client's sister. That on or about February 21, 1985, you did disburse the sum of $200.00 to your client. That subsequent to the above disbursements, the sum due and owing to your client was in the amount of $2,308.68. That you did fail to render an accounting to your client for the disbursal of his settlement funds until on or about May 17, 1985. That the settlement rendered by you on or about May 17, 1985 shows an overpayment to or on behalf of the client in the amount of $986.37. That in truth and in fact, at the time that this accounting was made, there was a sum of $2,308.68 due and owing to your client. That in your accounting of May 17, 1985, you did list items which were not paid by you and items for which no disbursement was made.
Specification 3
In connection with the above numbered complaint, in connection with the representation as detailed in Specifications number 1 and 2 above, it is alleged as follows:
That on or about June 16, 1986, a copy of a complaint filed by your client concerning the handling of his funds as detailed above was forwarded to you. That subsequent to the forwarding of said complaint to you, you did make disbursements to the client's sister as follows: on August 6, 1986 in the amount of $1,519.00, and a separate amount of $400.00; on August 12, 1986, the sum of $1,325.00. That at some point in time between the period of February 21, 1985 and August of 1986, there was the sum of $2,308.68 to which your client was entitled, and which was entrusted to you.
[2] Specification 4

That in your capacity as Attorney at Law, you were retained to represent the interest of one Curtis Barracco in a matter involving an automobile accident. That on or about June or July of 1978, this matter was settled for the sum of $4,900.00. That in connection with said settlement, you did receive a draft in the amount of $4,900.00 made payable to Curtis Barracco and yourself. That said draft was deposited into an account entitled Vincent Anthony Marinello, Attorney at Law, account number XX-XXXX-X, at the Bank of New Orleans.