523 So.2d 834 (1988)
LOUISIANA STATE BAR ASSOCIATION
v.
George SCARIANO.
No. 87-B-2428.
Supreme Court of Louisiana.
April 11, 1988.
*835 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe, Metairie, Trevor G. Bryan, Elizabeth A. Alston, New Orleans, Christine Lipsey, Baton Rouge, for applicant.
George Scariano, Robert F. Wright, Domengeaux & Wright, New Orleans, for respondent.
DIXON, Chief Justice.
In this disciplinary matter, respondent pleads guilty to commingling and converting funds entrusted to him and to allegations that he failed to cooperate with the Committee on Professional Responsibility by not complying with its repeated requests for information between February and April, 1987.
The underlying facts of this proceeding are not in dispute. On July 18, 1986, respondent closed a loan while representing the new lender in a real estate transaction. The same day, but prior to receiving funds from his client, respondent issued a check in the amount of $93,540.16, drawn on his account, that was expected to pay off the first mortgagee. A dispute about the closing arose between respondent and his client, resulting in a delay in funding and the Non Sufficient Funds return of respondent's $93,540.16 check. That dispute (which did not give rise to the present proceeding) was settled some two weeks later, in early August. There is no evidence in the record to show that Scariano's client gave him a check at this time, but this fact may be inferred from respondent's confession that he did not pay off the first mortgagee after the loan closing because, by his own account, he had "used" between $30,000 and $40,000 of his client's funds.[1] In fact, it would not be until November, 1986, some four months after the loan closing, that Scariano would submit two cashier's checks to the first mortgagee's local collection attorney to cover the cost and interest of the overdue mortgage payment. In the interim, he had been contacted by the first mortgagee at least five times and by counsel for the first mortgagee at least once. Furthermore, respondent ignored at least four orders by counsel for the committee to provide the bar association with documentation, including copies of all checks received and paid by respondent in connection with the act of sale and of any and all related bank statements.
After disciplinary hearings conducted September 28, 1987, the committee unanimously found respondent guilty of the misconduct described in the two specifications *836 alleged against him. These specifications accused respondent of the following breaches of professional responsibility:
"SPECIFICATION NUMBER 1COMMITTEE FILE NO. 8742
In connection with the above numbered complaint, it is alleged as follows:
That in your capacity as Attorney at Law and Notary Public, you were the closing notary for First Metropolitan Mortgage Company of Baton Rouge in a refinancing of an existing loan on property. On July 18, 1986, the closing of the new loan occurred. That in connection with this closing, you did issue a check in the amount of $93,540.16 to pay off the first mortgage with Mortgage Corporation of the South. That said check was returned by the bank for nonsufficient funds. That said check was not made good and the preexisting loan was not paid off until approximately November 17, 1986. That you have issued a check knowing you did not have sufficient funds in the bank to cover said check; that you have commingled funds entrusted to you; that you have converted funds entrusted to you to your own use; all in violation of Disciplinary Rules DR 9-102(A)(B) and DR 1-102(A) of the Code of Professional Responsibility of the Louisiana State Bar Association.
SPECIFICATION NUMBER 2COMMITTEE FILE NO. 8742
In connection with the above numbered Committee file, it is alleged as follows:
That following your initial reply to complaint number 8742, you were, by letter dated February 24, 1987, requested to supplement your response within fifteen (15) days by providing certain items of documentation and explanation, nine in number. That you did fail, neglect, or refuse to reply to said letter. That subsequently, a follow-up letter was sent to you under date of March 25, 1987, again requesting your supplemental reply as requested in the letter of February 24, 1987. You did fail, neglect, or refuse to reply to said letter. That subsequently, by letter dated April 10, 1987, you were again requested to provide your supplemental response as requested in the letter of February 24, 1987 and you were advised concerning Rule 8.4(g). That you did fail, neglect, or refuse to provide any response to that letter and have failed, neglected, or refused to provide supplemental response as requested. That you have failed to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct in violation of Rule 8.4(g) of the Rules of Professional Conduct of the Louisiana State Bar Association."
The committee's petition for disciplinary action was filed November 6, 1987. We granted the parties' joint motion to proceed without appointment of Commissioner and waiver of applicable rights by letter dated January 15, 1988.
In its brief to this court, the committee noted that if one were to disregard the mitigating circumstances of this case, respondent would deserve three years suspension from the privilege to practice law in this state. Nonetheless, the committee recommended that respondent be given a lesser sanction, eighteen months suspension, because it found that four mitigating factors under standard 9.32 of the American Bar Association's Standards for Imposing Lawyer Sanctions are applicable in this case:
"Of the thirteen (13) mitigating factors listed in the A.B.A.'s Standards for Imposing Lawyer Sanctions, standard 9.32, the Committee is of the opinion that four (4) are clearly applicable, to wit: (a) absence of a prior disciplinary record; (d) timely restitution; (e) full and free disclosure to the Committee at the hearing (although Respondent initially failed to cooperate; see Specification 2); and (1) remorse."
Respondent submitted that he should only be required to perform public service:
"An alternative form of discipline is urged in this case, one which would cause respondent to `pay' for his infraction in a manner which would benefit others, and at the same time, serve as a great deterrent to respondent and other lawyers.

*837 Mr. Scariano is a capable lawyer and his talents could be utilized for the public good. For example, requiring respondent to devote his skills to serve indigent defendants would constitute a real sacrifice to him and simultaneously benefit the needy.
The Committee has recommended that Respondent be given an 18-month suspension from practice. What would result from such a penalty? Respondent would be greatly harmedno one would benefit.
If Respondent were ordered to work 20 hours per week, for, say two years, on behalf of indigent defendants, what would be the consequences? Respondent would be giving up some 2,000 hours of precious time during a prime period of his law practice. It would result in a heavy fine or penalty to him and would constitute serious disciplinary action by the Court.
At the same time, 20 hours of legal work per week, for two years, from a lawyer of Respondent's experience would equate to $150,000 to $200,000 worth of services to a worthy, quasi-court supervised cause.
In essence, Respondent agrees that discipline is due but an alternative to suspension from practice would be most suitable in this case. Accordingly, we urge this Honorable Court to exercise its authority in a way which will best serve all concerned, i.e. reasonable disciplinary action for Respondent which will command compliance with the rules of professional responsibility, and in the process, provide benefits to others."
In support of his request, respondent furnishes a copy of correspondence to his attorney from the chairman of the Indigent Defense Board for Jefferson Parish favoring such alternative sanctions:
"The Indigent System, in Jefferson Parish, is in dire need of voluntary legal talent and services at all levels of legal representation for indigent citizens accused of crime from misdemeanors to capital cases. Such citizens are in need of legal attention including research, investigation, trial, application for writs and processing appeals."
Because respondent has confessed to the misconduct specified against him, we are only called to determine what constitutes an appropriate sanction.
"An appropriate penalty will protect the courts and the public from unprofessional and illegal conduct by deterrent effect...." Louisiana State Bar Association v. Stewart, 500 So.2d 360, 364 (La.1987).
Having reviewed transcripts from the formal investigatory hearing, read briefs of opposing counsel, and heard oral argument, we are unable to adopt either the committee's recommendation of eighteen months suspension or respondent's plea for two years supervised probation.
In fashioning a sanction, due consideration must be given the following factors: the duty violated; the lawyer's mental state; the injury caused by the lawyer's misconduct; and the existence of aggravating circumstances. Standard 3.0, American Bar Association Standards for Imposing Lawyer Sanctions. Respondent admits to commingling and converting or "using" client funds. "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." Standard 4.11 (emphasis added). This harsh remedy is generally reserved for instances where, as here, "the lawyer uses the client's funds for the lawyer's own benefit." Commentary, Standard 4.11. "Suspension should be reserved for lawyers who engage in misconduct that does not amount to misappropriation or conversion." Commentary, Standard 4.12 (emphasis added).
The disciplinary committee was of the opinion that four mitigating factors were clearly applicable in this case, but our review of the facts produces a different result. For instance, relator's brief commended respondent for his "full and free disclosure to the Committee" even after pointing out in Specification 2, one basis for this proceeding, that respondent failed to respond to three letters from the committee, leading the bar association to cite respondent for failing "to cooperate with *838 the Committee on Professional Responsibility in its investigation of the alleged misconduct." Similarly, the committee noted respondent's "timely restitution," even though respondent did not remedy his inexcusable overdraft and conversion until almost four months later, after ignoring repeated requests from his client.
Respondent's substantial experience in the practice of law, and his repeated failures to comply with the committee's requests for information are additional aggravating circumstances that should be considered in this case. Standard 9.2. Furthermore, respondent has not disclosed to us the reasons, nor the details, of his "use" of his client's funds.
"... The rules and standards governing the conduct of attorneys unquestionably have the force and effect of substantive law. ..." Louisiana State Bar Association v. Krasnoff, 488 So.2d 1002, 1007 (La. 1986). Respondent has unquestionably violated DR 9-102 by failing to segregate his client's funds from his own and by using his client's funds. Louisiana State Bar Association v. Hinrichs, 486 So.2d 116, 122 (La.1986).
"... The misuse of client funds, as the facts of this case so clearly reveal, represents the gravest form of professional misconduct and strikes at the heart of the public's confidence in the legal profession, which this court is duty bound to protect...." Louisiana State Bar Association v. Zeringer, 447 So.2d 466, 469 (La.1984).
Nonetheless, respondent's full restitution, his remorse and his potential value to the legal profession and to the state deserve serious consideration. There is at present no alternative system of sanctions for unprofessional conduct provided by the rules. The occasional need for an alternative to suspension or disbarment has been felt, and studies are now under way for possible changes in disciplinary procedures. Changes are not likely to be adopted at an early date, however.
Respondent is therefore suspended from the practice of law for two years; if and when alternative sanctions are developed and adopted, he may apply for an opportunity to demonstrate that they are more appropriate. Respondent is cast for all costs of these proceedings.
LEMMON, J., concurs.
NOTES
[1] The funding source of the cashier's checks ultimately used in November to complete the transaction was not made part of the record but respondent confessed to the charges of commingling and conversion contained in Specification No. 1; moreover, his attorney stated, and he acknowledged, that he used for personal reasons money "received by him" to pay off the mortgage.