CALOGERO, Justice.
This is a disciplinary proceeding by the Louisiana State Bar Association, through its Committee on Professional Responsibility against one of its members, William J. Dutel. Dutel is charged with one specification of misconduct in connection with his conviction in federal court on what the Committee has termed “a technical violation of the banking regulations”, arising from a misrepresentation in his loan application to a federally insured savings and loan institution.
The Committee on Professional Responsibility instituted this disciplinary proceeding against Dutel by securing a certificate of conviction and filing a Report with this Court on June 19, 1987, pursuant to the authority vested in the Association under Articles of Incorporation, Article 15, section 8(a)(1), (3).[1] La.R.S. 37:219, Appendix.
*504 In the Committee’s Report, they averred that on February 11,1987, William J. Dutel was convicted upon a plea of guilty as charged in the United States District Court for the Eastern District of Louisiana for a violation of Title 18 U.S.C. Section 1014, making false statements to an institution with accounts insured by the Federal Savings and Loan Insurance Corporation. The Committee requested that this Court take proper interim measures against Dutel and refer the matter back to the Committee for further proceedings in compliance with Article 15, section 8(a). On September 24, 1987, pursuant to the request contained in the Committee’s report, and Article 15, section 8(a)(4) provided in footnote 1 above, this Court declined to suspend Dutel and ordered the matter back to the Committee for further proceedings.
The Committee held a formal investigative hearing concerning Dutel’s conviction on June 29,1988. Respondent was present at the hearing and represented by counsel. He testified on his own behalf. Respondent proferred testimony concerning the nature of his offense and the mitigating circumstances to be considered in shaping a punishment for his violation of the Rules of Professional Responsibility.
The Committee and Dutel filed a Joint Motion to Proceed Without Appointment of Commissioner and Waiver of Applicable Rights, a streamlined procedure established in Louisiana State Bar Association v. Vincent Marinello, 523 So.2d 838 (La.1988), wherein this Court ordered that the parties be permitted to waive oral argument, the appointment of a Commissioner, and the Commissioner’s Hearing and Report. We granted this joint motion and ordered the parties to submit this matter to the Court on the record as developed at the Committee hearing on June 29, 1988.
*505 On December 5, 1988, consistent with this Court’s order, the Committee filed a petition for disciplinary action against the Respondent, who thereupon filed an answer. In its petition, the Committee stated that Dutel’s conviction is of a serious nature, one which is defined as a felony, and thus one which warrants discipline. However, the Committee stated, “The criminal activity for which Respondent was convicted involves a technical violation of the banking regulations.” To support this contention, the Committee simply cited Dutel’s testimony at the investigatory hearing in which he alleged that in many instances “a release or cancellation is not perfected until sometime after the [loan] closing”.
The Committee continued by examining the mitigating circumstances in determining its recommendation; that the conviction did not involve the practice of law, Respondent’s post-conviction conduct has been exemplary and he still maintains the vote of confidence from his peers in the legal community. The Committee concluded by recommending that, based upon all of the evidence adduced at the investigatory hearing and consideration of the mitigating factors, outlined in the American Bar Association’s Standards for Imposing Lawyer Sanctions, and specified above, this Court should issue respondent a public reprimand.
In Dutel’s answer to the Committee’s petition, he agreed with the Committee’s recommended sanction. Dutel emphasized his remorse at committing the offense and asserted that, considering his family and financial hardship, his federal sentence which includes community service, presently being fulfilled by pro bono legal work for the cities of New Orleans and Kenner, and his previously clean record, a public reprimand is appropriate.
In Louisiana State Bar Association v. Frank, 472 So.2d 1 (La.1985), a disciplinary proceeding based on the conviction of a crime, we held that although the conviction was conclusive evidence of guilt (Art. 15, § 8(a)(7)(c)), the facts underlying the conviction of the crime were extremely important in the determination of the appropriate discipline.
From the record established at the investigatory hearing, we ascertain the following facts: Dutel created business ventures for the purpose of breeding, racing and showing American saddlebred show horses. Through these business ventures, Dutel established loan relationships at both First Financial Bank and Dixie Savings & Loan Association, now known as Oak Tree Savings & Loan. First Financial Bank loaned money to Dutel Farms, Dutel’s personal horse business, to acquire the horses and to pay for the daily operating expenses incurred by the Farms. To secure these loans, First Financial took a chattel mortgage on the horses acquired by Dutel Farms. Dixie Savings & Loan granted a line of credit to partnerships to be formed by Dutel to enable the partnerships to buy the horses from Dutel Farms, breed the Saddlebrood mares, raise the offspring and sell them. Dixie also loaned money to prospective partners who wanted to buy into the partnerships.
In October, 1984, Dutel formed American Saddlebred Brood Mares, Limited, a limited partnership designed to breed the mares, raise the offspring and sell them as described above. Dutel Farms sold several horses to American Saddlebred Brood Mares, Limited at the time it was formed. Dixie Savings and Loan established a line of credit for the limited partnership to enable American Saddlebred to buy the mares. At the time Dixie Savings and Loan granted the line of credit, it took a chattel mortgage on the horses owned by the partnership. The horses sold by Dutel Farms to American Saddlebred Brood Mares, Limited, were previously mortgaged to First Financial Bank to secure the acquisition and line of credit loans for Du-tel Farms. Prior to the sale of the horses by Dutel Farms to American Saddlebred Brood Mares, Limited, Dutel contacted First Financial Bank, Dutel Farms’ lender, informed the bank of the impending sale and discussed a restructuring of the First Financial loans and a release of the horses, to be sold by Dutel Farms from the mortgage at First Financial Bank. However, that release was not formally executed un *506 til several months after the sale of the horses to the partnership.
In the application for the line of credit to be extended by Dixie Savings & Loan to American Saddlebred Brood Mares, Limited to purchase the horses from Dutel Farms, Dutel represented that Dixie Savings & Loan would have a first mortgage on the horses sold by Dutel Farms to the limited partnership. The United States Government correctly posited that Dutel should have executed the partial release on the day that the partnership gave its mortgage to Dixie. Absent such a showing by Dutel, who represented to Dixie that the horses were unencumbered, Dutel violated federal law by misrepresenting a material fact in his loan application to an institution insured by the Federal Savings and Loan Insurance Corporation for the purpose of influencing that institution to give him a loan.
In Dutel’s testimony at the preliminary investigation, Dutel explained his delay in paying off the prior mortgage and securing the cancellation of the mortgage. Dutel stated that he and the officer assigned the loan at First Financial Bank were unable to set an appointment because of conflicting schedules. By the time they were able to meet, First Financial underwent a shakeup in management and the officer was terminated. By the time a new officer was appointed to manage his loan, several months had elapsed. When the new officer and Dutel finally met, the Release of the chattel mortgage on the horses was executed. As it turns out, Dixie was not harmed as a result of the subordination of Dixie’s loan to that of First Financial’s loan for those few months.
The sole issue to be determined in a disciplinary proceeding based on conviction of a crime is whether the crime warrants discipline and, if so, the extent thereof. Articles of Incorporation, Article 15, section 8(7)(a)-(d). La.R.S. 37:219, Appendix. The discipline to be imposed for the conviction of a crime depends on the seriousness of the offense, the circumstances of the offense, and the extent of aggravating and mitigating circumstances. Louisiana State Bar Association v. Brumfield, 449 So.2d 1017 (La.1984). Mitigating circumstances which may be shown are those which do not amount to a justification or excuse for the offense, but which may properly be considered in mitigation or reduction of the disciplinary action to be taken. Louisiana State Bar Association v. Porobil, 444 So.2d 613 (La.1984)
In the case at bar, Dutel knowingly provided the Dixie Savings and Loan with false information concerning the prior en-cumberance of horses sold to the new partnership. However, under the facts adduced at the hearing, Dutel did not attempt to defraud any party, and in fact did not cause any person or party to suffer any losses.[2] Dutel simply failed to wait for the release to be formalized, and as a consequence caused Dixie to have a mortgage which of record was inferior to First Financial Bank’s mortgage for several months. The Committee, in its petition, characterizes Respondent’s criminal activity as “technical” in nature. While we do not condone Dutel’s failure to follow the proper procedure, we feel that Dutel’s lack of intent to defraud any person or institution goes to the heart of the seriousness of the crime and is therefore a substantial mitigating factor in shaping a sanction.
Furthermore, Dutel’s conviction was not connected with the practice of law and did not involve any client or professional associate. The record does not show any previous complaints during Dutel’s thirteen years as an attorney. As evidenced by the many letters written by judges, attorneys and clients, Dutel still enjoys a reputation *507 in the legal community of honesty, integrity and competence. He was previously an active member of the American Bar Association and continues to serve his profession through free legal services mandated by the terms of his probation and suspended sentence.
The purpose of disciplinary proceedings is to insure that attorneys maintain appropriate standards of professional conduct, thus protecting the public and the administration of justice. Louisiana State Bar Association v. Heymann, 405 So.2d 826 (La.1981). This purpose is not served by imposing a greater sanction than is warranted by the seriousness of the offense in question, considered in light of all of the aggravating and mitigating circumstances. Louisiana State Bar Association v. Weinstein, 416 So.2d 62 (La.1982). For these reasons, we agree with the recommendation of the Committee on Professional Responsibility and find a public reprimand appropriate.
Accordingly, it is ordered that William J. Dutel be issued an official public reprimand for his unethical conduct in this matter.

. Article 15, section 8(a) provides:
(1) Upon learning that an attorney has been convicted of a crime, whether the conviction results from a plea of guilty or nolo contendere or a verdict after trial, the Committee on Professional Responsibility shall secure a certifícate of such conviction from the applicable Clerk of Court.
*504 (2) The Committee shall then make a determination whether or not the crime of which the attorney has been convicted constitutes a serious crime. The term "serious crime" means a felony or any other crime, the necessary element of which as determined by the statute defining such crime, reflects upon the attorney's moral fitness to practice law.
It will be necessary for the Committee in determining whether or not the crime constitutes a "serious crime" to study the statute defining the crime, particularly if the crime involves the violation of a statute of the Federal Government or another state or jurisdiction.
When the conviction of the attorney is not final, the Committee must hold a contradictory hearing and determine that the conviction involves a "serious crime".
(3) Upon completing its determination as to whether or not the crime constitutes a “serious crime", the Committee shall file a written report with the Supreme Court, setting forth its findings and conclusions.
(4) If the Supreme Court should concur with the opinion of the Committee that the crime of which the attorney has been convicted constitutes a serious crime, the Supreme Court may suspend the respondent from the practice of law and order the Committee to institute the necessary disciplinary proceedings, provided, however, that the disciplinary proceedings so instituted will not, unless requested by the accused, be brought to a hearing until all appeals from the conviction are concluded.
(5) If the Committee in its report to the Supreme Court has concluded that the crime of which the attorney has been convicted is not a serious crime, or if the Supreme Court should determine independently that the crime is not a serious crime, the Supreme Court will refer the matter back to the Committee.
(6) An attorney will be reinstated immediately on the reversal of his conviction for a serious crime that has resulted in his suspension, but the reinstatement will not terminate any disciplinary proceedings then pending against him.
(7) After conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent, in the same manner as ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent’s conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline and, if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by statute defining the crime.
(8) Except as provided hereinabove in this Section, the procedure with reference to proceedings based on a conviction of a crime, shall be conducted in the same manner as in ordinary proceedings.

. Indeed, the intent to defraud is not an element of the Dutel’s crime. The elements for a violation of 18 U.S.C. 1014, making a materially false statement on a loan application to a federally insured bank are 1) making a false statement on a loan application; 2) knowing the statement is false; and 3) for the purpose of influencing in any way action of the bank the deposits of which are insured by the Federal Savings and Loan Insurance Corp. U.S. v. Nelson, 485 F.Supp. 941 (W.D.Mich.1980). The intent to defraud or to profit personally is irrelevent to the crime of making a false statement to a federally insured loan institution. U.S. v. Whitman, 665 F.2d 313 (10th Cir.1981).