ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.*
This attorney disciplinary proceeding arises from five counts of formal charges instituted by the Office of Disciplinary Counsel (“ODC”) against respondent, Donald 0. Pinkston, an attorney licensed to practice law in the State of Louisiana. The charges allege violations of Rules 1.15(a)(safekeeping of client funds), 1.15(b)(failure to account for and refund client funds), 1.15(c)(failure to keep property subject to dispute separate from that of attorney), 3.4(a)(unlawful obstruction of access to evidence to opposing party), 3.4(c)(knowingly disobeying an obligation to a tribunal), 8.1(b)(knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c)(failure to cooperate with the ODC in its investigation), 8.4(a)(violating the professional rules), 8.4(b)(commission of a criminal act) and 8.4(e)(engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct, and Supreme Court Rule XIX, § 9(c)(failure to respond to a disciplinary authority).
UNDERLYING FACTS
This matter arises from four complaints filed by Crescent City Health Care, Inc. (“Crescent City”) on behalf of its employee, Dr. Earl Stewart. Essentially, the complaints raised identical facts. In 1994 and 1995, respondent represented clients in personal injury cases who had been treated by Dr. Stewart. After the eases settled, respondent distributed the settlement funds to his clients, but withheld an amount owed for *382 outstanding medical expenses for services rendered by Dr. Stewart. ■ Thereafter, respondent failed to reimburse Crescent City or Dr. Stewart, despite repeated requests. The record indicates respondent did not maintain the funds in his client trust |2account and the money was commingled and converted to his own use. In 1996, approximately two weeks after the complaints were filed, respondent provided payment to Crescent City.[1]
The last count of the formal charges arose from respondent’s failure to cooperate in the disciplinary investigation of the first four counts. The record indicates that on October 2, 1996, respondent was served with a subpoena ordering him to appear on October 22, 1996 to testify and produce all financial records, including original canceled checks and bank statements, regarding the settlement and disbursal of funds for several clients. While respondent did appear, he failed to produce the requested records.
DISCIPLINARY PROCEEDINGS
After the conclusion of its investigation, the ODC instituted formal charges against respondent. Respondent filed an answer in which he denied any misconduct.
A formal hearing was conducted. Respondent was represented by counsel and testified at the hearing. Initially, respondent testified that he retained the funds because he was unable to locate Dr. Stewart, and was unaware Dr. Stewart had been affiliated with Crescent City at the time the.services were rendered. While respondent conceded the withheld funds were not always kept in his client trust account, he raised the so-called “black box” defense. Respondent testified he took the money to pay Dr. Stewart, in cash, out of his client trust account and put the cash in envelopes in his safe, with the respective case designation and notation that the funds were for Dr. Stewart.[2] In mitigation, the respondent asserted there was no client injury since he had signed the lien guaranteeing payment to the health care provider. Further, he stated there was little likelihood of the misconduct reoccurring since his practice is now concentrated in the area of criminal law defense.
is At the conclusion of the formal hearing, the hearing committee filed its recommendation with the disciplinary board, concluding respondent violated the rules as charged. Citing Louisiana State Bar Ass’n v. Kras-noff, 488 So.2d 1002 (La.1986),[3] the committee found the respondent failed to maintain funds entrusted to him in a fiduciary account, which creates a presumption that he misappropriated the funds. It determined respondent failed to rebut this presumption, since he offered no evidence to support his “black box” defense. Further, the committee determined respondent failed to cooperate with the ODC in its investigation by not producing the subpoenaed and required records. The committee found the respondent’s actions were intentional, and caused actual financial harm to the health care provider, since it resulted in a delay in payment.
Relying on Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), the committee concluded the baseline sanction for respondent’s conduct was disbarment. As to aggravating factors, the committee recognized: prior discipline,[4] dishonest and selfish *383 motive, pattern of misconduct and multiple offenses, and failure to cooperate. In mitigation, the committee noted the respondent acknowledged that he took the money out of the trust account and acknowledged that he made a mistake. Based on these findings, the committee recommended respondent be suspended for eighteen months and' be required to take twelve hours of continuing legal education in the area of ethics and professional responsibility prior to readmission.
Both respondent and the ODC filed objections to the committee’s recommendation. Oral arguments were conducted before a three member panel of the disciplinary board. Thereafter, the disciplinary board issued its recommendation to this court. The board concurred in the findings of the hearing committee that there was clear and convincing evidence respondent was guilty of the ^misconduct as charged. It further concluded respondent’s conduct was knowing and intentional, and adopted the aggravating and mitigating factors cited by the committee, as well as the additional mitigating factors cited by the respondent in brief.[5]
As to the issue of sanctions, the board deviated from the eighteen month suspension recommended by the committee, finding that a two year suspension was more appropriate. In support, the board reasoned that the baseline suspension for respondent’s conduct under Hinrichs was a three year suspension. While the board found the mitigating factors present in the case did not justify a reduction of this baseline sanction to an eighteen month suspension, it concluded the mitigating factors were sufficient to reduce the sanction to a two year suspension.
One board member concurred stating that he might have been inclined to propose a suspension deferred in part, if it were not for the respondent’s prior disciplinary record.
The ODC filed an objection in this court to the leniency of the board’s proposed sanction. Respondent also filed an objection, contending the sanction was too severe. Pursuant to Supreme Court Rule XIX, § 11(G)(1)(b), the matter was set on this court’s docket for oral argument.
DISCUSSION
Procedurally, respondent first argues that the disciplinary board violated Supreme Court Rule XIX, § 2(D),[6] since only three members of the adjudicative committee heard oral arguments in this case, not the minimum of seven members as required by the rule. There is no merit to this contention. Supreme Court Rule XIX, § 2(D) does not specify the number of board members who must hear oral argument; rather,, it merely provides that a minimum of seven must participate and vote for the board to “act.” The “act” of the board is its recommendation to this court. The record reveals nine board members participated and acted on this recommendation.
IsOn the merits, the record supports the findings of fact made by the hearing committee that respondent commingled and converted the client funds. As to the issue of sanctions, both the hearing committee and disciplinary board relied on the guidelines for commingling and conversion cases set out in our opinion in Hinrichs. Under that decision, we set forth the penalties for conversion, ranging from disbarment to reprimand. The most serious penalty, disbarment, is reserved for cases where the attorney acts in bad faith and causes great damage or risk of damage to his or her client. For cases not involving these factors but including a “high degree of negligence” on the part of the *384 attorney, Hinrichs provides for a three year suspension. On the lower end of the range, Hinrichs held that a suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree; no other fraudulent acts are committed in connection with the violation of the disciplinary rule; there is no serious harm or threat of harm to the client; and full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made. Hinrichs further held that a suspension from practice of eighteen months or two years will typically result where the facts are appropriate for a three-year suspension, except that there are significant mitigating circumstances, or where the facts are appropriate for a one-year suspension, except that there are significant aggravating circumstances.
In the instant matter, respondent’s conduct fits the parameters of the lower end of the range, in that there was no high degree of negligence on his part, no fraudulent acts were committed in connection with the conversion, and respondent’s clients were not exposed to a threat of serious harm from respondent’s actions. However, we find respondent failed to make restitution promptly, as he did not do so until the disciplinary complaint was filed. Additionally, there are a significant number of aggravating factors, such as respondent’s prior disciplinary history (including a reprimand for commingling funds), multiple offenses and respondent’s substantial experience in the practice of law. Under these circumstances, the disciplinary board did not err in recommending a twenty-four month suspension.
JeDECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs and oral argument, it is the decision of the court that respondent, Donald 0. Pink-ston, be suspended from the practice of law for a period of twenty-four months. Respondent is assessed with all costs of this proceeding in the amount of $571.68.

 Marcus, J. not on panel. IV, Part II, 3.

. The amounts converted and the time periods involved are as follows:
Count I $ 850.00 — 2/18/94 to 4/01/96;
Count II $ 770.00 — 2/18/94 to 4/01/96;
Count III $1,820.00- 1/05/95 to 4/01/96;
Count IV $1,355.00 •— 2/10/94 to 4/11/96.

. Later, when he made reimbursement to Crescent City, respondent stated he redeposited the cash that had been put aside in the safe for Dr. Stewart back into his client trust account and wrote a check on his trust account.

. In Krasnoff, this court stated:
Indeed, when an attorney relies upon a "black box” defense, viz., that he kept the funds secretly but securely in a private place or similar unregulated depository, the likelihood of actual embezzlement is so great and the policy of professional responsibility in protecting the client from such risks so strong, that it should be presumed that the attorney is guilty of embezzlement unless.he successfully carries both the burden of going forward with the evidence and the burden of persuasion otherwise.

.In January 1997, respondent was reprimanded by the disciplinary board for misleading clients, failing to return an unearned fee, and commingling funds (95-DB-034). Respondent was also admonished four times between 1994 — 1995 for failure to cooperate by not filing written answers *383 to complaints (94-ADB-017, 94-ADB-020, 94-ADB-044, and 94-ADB-l 17).

. In his brief, respondent asserted that he did not have substantial legal experience in the handling of personal injury matters, since his practice is concentrated in the area of criminal law. Further, while admitting his handling of the matter was poor with respect to Dr. Stewart’s absence, he stated that another reasonable man could have behaved the same way (i.e., withheld funds since he did not know about the existence of the medical group seeking payment).

. Supreme Court Rule XIX, § 2(D) provides in pertinent part:
The adjudicative committee shall act with the concurrence of a majority of adjudicative committee members, provided at least seven committee members participate and vote.