774 So.2d 95 (2000)
In re John Burt KLEINPETER.
No. 00-B-1966.
Supreme Court of Louisiana.
November 28, 2000.
Rehearing Denied January 5, 2001.
*96 Charles B. Plattsmier, Baton Rouge, Counsel for Applicant.
John Burt Kleinpeter, Thibodaux, William A. Porteious, III, New Orleans, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This matter arises from two counts of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, John Burt Kleinpeter, an attorney licensed to practice law in the State of Louisiana.

UNDERLYING FACTS

Count ICredit Card Fraud
In May of 1997, respondent received an unsolicited, pre-approved credit card application in the name of his former wife. Respondent, who had been divorced for a period of four years, forged the signature of his former wife on the application without her knowledge or consent. Upon receiving the credit card in her name through the mail, he transferred $5,500 of his personal credit card debt incurred after his divorce to the card. Respondent utilized the card for approximately one year, defaulted on the transferred balance and ignored past due notices for several months.
Subsequently, the United States Postal Inspector's Office instituted an investigation into the matter. Upon learning he was the target of a federal investigation, respondent contacted law enforcement authorities in an effort to cooperate and provided full restitution. In lieu of pleading guilty, he participated in a pre-trial diversion plan sponsored by the United States Attorney's Office and was sentenced to 100 hours of community service. Later, respondent self-reported his misconduct to the ODC.

Count IIBates Matter
On May 2, 1997, Shala Jo Bates retained respondent to represent her and her minor son in a personal injury matter, agreeing to pay respondent a twenty-five percent contingency fee in the event of recovery. Thereafter, respondent settled her case and placed the settlement funds in his law firm operating account, because he no longer maintained a separate client trust account. Respondent then issued a check to his client, after withholding thirty-three *97 and one-third percent of the settlement for his attorney fees (rather than twenty-five percent, as required by the contract). He also withheld amounts owed to three third party healthcare providers. Of these third party funds, respondent provided timely payment to his father, T.W. Kleinpeter, M.D., who was Ms. Bates' orthopedist, but failed to pay the two remaining health care providers, Thibodaux Regional Medical Center and Leslie Daigle, a physical therapist, the respective amounts of $298 and $827.[1]
One year later, Ms. Bates learned that respondent had failed to satisfy the outstanding medical bills and that, as a result, she had been reported to a credit bureau. When respondent failed to respond to her request that her medical bills be paid, she advised respondent's legal secretary, Loretta Lombas, that it was her intention to file a complaint with the ODC. At respondent's direction, Ms. Lombas forwarded Ms. Bates $500 in the form of a money order for "her troubles and inconvenience" stemming from respondent's inaction. The accompanying cover letter, signed by Ms. Lombas, stated "[i]t is our understanding that with acceptance of this payment, you do not plan to go forward with any dispute with the Bar Association."[2]
Subsequently, Ms. Bates filed a complaint with the ODC, primarily alleging respondent settled her case without her authority, assessed a legal fee in excess of the employment contract and failed to pay two healthcare providers. Several days later, respondent forwarded a check for $454.32 to Ms. Bates for the portion of the legal fee that he improperly withheld, contending he was unaware the employment contract specified a twenty-five percent contingency fee. Upon presentation, the check was declined for insufficient funds in respondent's operating account. Almost one and one-half years after the case settled, the two remaining healthcare providers were reimbursed.

DISCIPLINARY PROCEEDINGS
After investigation of both the credit card matter and the Bates matter, the ODC filed formal charges against respondent alleging violations of Rules 1.5(c) (insufficient contingency fee contract), 1.15(a)(b) (commingling and conversion of client funds), 8.4(a) (violating the professional rules), 8.4(b) (commission of criminal act adversely reflecting on honesty and fitness) and 8.4(c) (engaging in fraud) of the Rules of Professional Conduct.[3] Respondent filed an answer admitting to most of the charged misconduct, but disputed some of the allegations, including those that he intentionally converted client funds.
Subsequently, a formal hearing was scheduled by the hearing committee and the parties stipulated to several pertinent facts.[4] Respondent filed a pre-hearing *98 memorandum admitting to the factual allegations concerning the credit card fraud, but claimed he was emotionally stressed and angry over his bitter and contentious divorce. He noted that he voluntarily reported his misconduct to the ODC. Regarding the Bates matter, respondent conceded he violated Rules 1.15(a) and 1.15(b) relative to trust accounts and commingling of funds. However, he asserted his actions were unintentional and negligent, and that the settlement funds were erroneously placed in his law office operating account because he no longer maintained a separate client trust account. He stated he was not taught in law school about the intricacies of handling client funds. Further, respondent stated he erroneously failed to consult with the employment contract prior to withholding his usual thirty and one-third percent contingency fee. As to the third party healthcare providers, he maintained they were unpaid "through office oversight." When he discovered the omission, he was short of funds. While respondent admitted to having forwarded Ms. Bates $500 "for her trouble" and "inconvenience," he denied that it was to dissuade her from filing a disciplinary complaint.
At the formal hearing, the ODC presented no witnesses. Respondent testified on his own behalf, and presented the testimony of his legal secretary, Ms. Lombas, and his paralegal.

Hearing Committee Recommendation
With respect to the credit card charge, the hearing committee concluded respondent violated Rules 8.4(a), (b) and (c) of the Rules of Professional Conduct when he engaged in a criminal act that adversely reflected on his trustworthiness and honesty and fitness as a lawyer. The committee found no merit in respondent's claim that his criminal actions stemmed from anger over his emotionally charged divorce, noting the incident occurred several years after the divorce proceedings. Moreover, it recognized respondent self-reported his conduct to the ODC only after he received a letter advising that he was the target of a federal investigation.
As to the Bates matter, the committee concluded respondent violated Rule 1.5(c) when he failed to fully explain the contingency fee agreement to his client, and Rules 1.15(a) and (b) when he commingled funds owed to his client and the third party healthcare providers, and failed to properly remit payment to them. The committee rejected respondent's assertion that he was unaware he was obligated to maintain a client trust account, noting the settlement check to Ms. Bates had an IOLTA designation, thus, indicating the operating account had been his client trust account at one time.
Based on these findings, the committee recommended respondent be suspended from the practice of law for a period of not less than eighteen months and that he obtain no less than eighteen hours of continuing legal education in the area of ethics and professional responsibility in addition to his mandatory continuing legal education requirements. It further proposed, upon reinstatement, a two year probationary period under the supervision of a practice monitor and monthly reviews of respondent's financial accounts.

Disciplinary Board Recommendation
The board accepted the findings of the hearing committee, and found respondent's actions were intentional, knowing and negligent. As to the issue of sanctions, the board recognized dishonest or selfish motives and multiple offenses as the pertinent aggravating factors. In mitigation, it noted the absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution, free and full disclosure to the ODC (albeit due to the federal criminal investigation), character or reputation, remorse and imposition of other penalties or sanction. Relying on the significant mitigating factors, the board recommended an eighteen *99 month suspension, with nine months deferred, followed by a two year probationary period. It further recommended a certified public accountant be appointed at the expense of respondent to review and audit his trust account, as well as imposition of an additional eighteen hours of continuing legal education in the area of ethics and professionalism. One board member filed a dissent without assigning reasons.
Both parties filed an objection to the board's recommendation and, thus, the matter was docketed for oral argument pursuant to Rule XIX, § 11(G).

DISCUSSION
The record supports the findings of the hearing committee that the ODC proved the charged misconduct by clear and convincing evidence, both with regard to the credit card matter and the Bates matter. Therefore, the sole issue presented for our consideration is the appropriate sanction for respondent's violations.
In fashioning an appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass'n v. Guidry, 571 So.2d 161 (La.1990).
Respondent's actions in the credit card matter demonstrate a clear fraudulent intent. This court has traditionally taken a harsh view of such actions. See In re: Sentenn, 98-3019 (La.1/29/99), 730 So.2d 868 (disbarment imposed on attorney for mail fraud and conspiracy conviction); In re: Shall, 98-2304 (La.10/9/98), 719 So.2d 395 (three year suspension imposed by consent on attorney who purchased unauthorized copy cards from the Notarial Archives for the Parish of Orleans and misappropriated $14,250); In re: Basile, 98-0900 (La.5/29/98), 714 So.2d 687 (attorney disbarred following arrest for credit card fraud and theft). However, we recognize the presence of mitigating factors with regard to this charge, including his payment of full restitution and his self-reporting of his actions to the ODC.
As to the Bates matter, respondent committed serious misconduct by knowingly commingling client and third party funds, and by failing to remit payment to the third party health care providers on a timely basis. Although respondent asserts he was ignorant of the rules relating to the handling of client and third party funds, the evidence indicates respondent had a trust account at one time, but at some point began using this account as a general office account. In any event, respondent's purported ignorance of the disciplinary rules is not a defense. See Louisiana State Bar Ass'n v. Thalheim, 504 So.2d 822 (La.1987) ("[i]gnorance of the Disciplinary Rules which set forth the minimum level of conduct below which no lawyer may fall without being subject to disciplinary action is no excuse."). Moreover, respondent's ability to make timely disbursement to one of the third party health care providers (who also happened to be his father) calls into question his motives for failing to pay the other third party health care providers.
Respondent's actions in this regard caused actual harm to both his client and to two of the third party health care providers, who were deprived of their funds for over a year. Under similar circumstances, this court has imposed lengthy suspensions. See In re: Pinkston, 98-1926 (La.12/11/98), 728 So.2d 381 (this court imposed a two year suspension on an attorney who failed to reimburse health care providers who had treated four of his clients); In re: Holmes, 98-3008 (La.1/8/99), 729 So.2d 1018 (eighteen month suspension imposed by consent on an attorney who on two occasions withheld fees owed to medical providers from client settlements and placed the funds in firm's *100 operating fund rather than satisfying medical clients.) Again, however, mitigating factors are present, including respondent's lack of a prior disciplinary record and his ultimate payment of restitution.
In oral argument before this court, the ODC suggested the appropriate sanction for respondent's misconduct would be a suspension in the range of twenty-four to thirty-six months. After reviewing the facts of the credit card matter and the Bates matter, and having reviewed the aggravating and mitigating factors, we conclude the appropriate sanction falls in the highest end of this range. Accordingly, we will suspend respondent from the practice of law for a period of thirty-six months.

DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that John Burt Kleinpeter be suspended from the practice of law in Louisiana for a period of thirty-six months. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
LEMMON, J., concurs in part and dissents in part, and assigns reasons.
KIMBALL and TRAYLOR, JJ., dissent and would impose greater penalties.
LEMMON, J., Concurring in Part and Dissenting in Part.
Respondent's conduct, from a reading of the cold record, warrants the thirty-six month suspension imposed by the majority, the upper limit of the recommendation by disciplinary counsel of a suspension of twenty-four to thirty-six months. However, because the Hearing Committee that actually heard the witnesses and weighed the mitigating circumstances recommended a suspension of eighteen months (with nine deferred), plus probation with specified conditions, because the Disciplinary Board recommended the same period of suspension (with none deferred), and because Disciplinary Counsel alternatively recommended an eighteen-month suspension with probation on the conditions proposed by the Hearing Committee, I would impose a thirty-six month suspension from practice, but would suspend the penalty and place respondent on probation, with one of the conditions being that he actually serve an eighteen-month suspension.
Respondent's misconduct, as inferentially found by the disciplinary agencies, could be attributed more to inexperience and poor judgment and management skills than to dishonesty or a pattern of fraud that is usually involved in a thirty-six month suspension. The credit card incident, as found by the Hearing Committee, stemmed from an emotionally charged divorce which, although four years old, had ended shortly before the credit card incident with a bitter community property settlement. This foolhardy conduct, although very serious, was an isolated incident in which respondent made full restitution and the federal authorities decided not to pursue charges, after which respondent himself reported the incident to Disciplinary Counsel.
As to the Bates matter, Disciplinary Counsel admitted that charging the normal one-third contingency fee, rather than the specially quoted one-fourth fee, likely was inadvertent. Moreover, according to the evidence apparently accepted by the disciplinary agencies, respondent's secretary never advised him that Bates threatened to file a disciplinary complaint, but merely told him Bates had been reported to the credit bureau because of his failure to pay her medical expenses, whereupon he directed the secretary to send Bates a check for $500 for her inconvenience. The secretary drafted and mailed the letter that accompanied the check. Giving deference to the disciplinary agencies, I would not *101 find any disciplinary violations based on this conduct.
The remaining charges in the Bates matterthe commingling of funds and the failure to pay the medical expenseswarrant (along with the credit card incident) a penalty in line with the recommendations of the disciplinary agencies.
Therefore, while I concur in a thirty-six month suspension, I dissent in part and would suspend the penalty and impose probation with conditions, including an actual suspension of eighteen months.
NOTES
[1] The record indicates respondent forwarded a check to Ms. Daigle at some point, but it was declined for insufficient funds.
[2] Later testimony revealed that Ms. Lombas never advised respondent Ms. Bates threatened to file a complaint with the ODC. Instead, she simply told respondent that Ms. Bates had a credit problem stemming from the unpaid medical expenses. When respondent directed Ms. Lombas to send Ms. Bates $500 for her inconvenience, Ms. Lombas drafted and forwarded the letter which indicated the funds were being forwarded to prevent the ODC's involvement in the matter.
[3] The formal charges also alleged violations of Rules 1.4(a) (failure to keep client reasonably informed) and 1.4(b) (failure to give client sufficient information to participate in proceedings), However, the hearing committee and disciplinary board concluded there was insufficient evidence to support Ms. Bates' allegations that respondent settled her case without her authority, and the ODC did not object to this finding. Therefore, we will not address this issue.
[4] The parties stipulated respondent did not maintain a client trust account during the Bates matter and, thus, placed the settlement funds into his operating account. Further, the balance in his operating account fell below the amount necessary to pay the health care providers, but he later remitted payment to the them. Respondent also stipulated that he paid Ms. Bates $500, but he reserved his right to present evidence regarding his motivation for making this payment.