ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.
This attorney disciplinary proceeding involves two counts of misconduct filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Ermence DeBose-Parent, an attorney licensed to practice law in Louisiana.[1]
*81 UNDERLYING FACTS

Medical Provider Matter

In March 1998, respondent settled a personal injury case on behalf of Jamall DeBose.[2] Respondent withheld $2,244 from her client’s share of the settlement for payment to Uptown Physical Medicine and Rehabilitation (“Uptown”), a third party medical provider.
In June 1999, over fifteen months after the settlement, Robert Helferstay, an administrative support representative for Uptown, filed a complaint with the ODC indicating that respondent failed to pay Uptown for the medical services rendered to her client.
The ODC forwarded this complaint to respondent. When respondent did not reply, the ODC made a subsequent request for information. In light of respondent’s [^failure to respond to one of the letters, the ODC issued a subpoena compelling her attendance and production of documents at a scheduled deposition.
In the meanwhile, approximately one month after the complaint was filed, respondent issued a check to Uptown in the amount of $2,244, the amount she had previously withheld from her client’s settlement. The check was drawn on respondent’s operating account rather than her trust account. Subsequent investigation revealed her client trust account was overdrawn $700 at the time.
In her sworn statement to the ODC, respondent alleged her failure to pay Uptown was a “first-time mistake.” She claimed the matter “fell through the crack” because she had several clients with the same last name that had been treated by Uptown. While she admitted the check to Uptown was written on her operating account, she contended she did so in error. She expressed remorse for her financial mismanagement and testified as to her efforts to rectify the problem.
The ODC alleged respondent’s actions violated Rules 1.15(a) (failure to keep client and third party funds separate from the lawyer’s own property — commingling), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party and failure to render a full accounting upon request — conversion), 8.1(c) (failure to cooperate with the ODC) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct.

Becnel Matter

Respondent represented the defendant in connection with a lawsuit instituted by Lawanda Becnel, who was represented by attorney Donald Hyatt, II. On September 19, 1999, respondent, who was a candidate for public office at the time, was distributing campaign election flyers in a church parking lot. Ms. Becnel approached | ¡¡respondent and told her she looked familiar. Respondent told Ms. Becnel that she had seen her in court and reminded her she was representing the defendant in the litigation instituted by Ms. Becnel. According to Ms. Becnel, respondent then began discussing the litigation, telling Ms. Becnel that she was not going to win her case and questioning the quality of Mr. Hyatt’s representation.[3] Respondent then *82 suggested Ms. Becnel visit with respondent at her office to talk about the case, and gave Ms. Becnel her office telephone number. The conversation lasted approximately five minutes.
Immediately thereafter, Ms. Becnel contacted Mr. Hyatt and told him about her conversation with respondent. Mr. Hyatt in turn contacted the ODC, which advised him that ex parte communication was generally difficult to prove in the absence of objective evidence.
Subsequently, Ms. Becnel agreed to make the telephone call to respondent, utilizing a recording device provided by Mr. Hyatt.[4] On September 21, 1999, Ms. Bec-nel spoke to respondent, who scheduled a meeting with Ms. Becnel at her office on September 27, 1999. In this recorded conversation, respondent advised Ms. Becnel she did not think Ms. Becnel’s case was being handled in Ms. Becnel’s best interest, and that this was what they had discussed in their earlier conversation in the parking lot. She did not tell Ms. Becnel to advise Mr. Hyatt of their conversations or I ¿scheduled meeting. Rather, respondent told Ms. Becnel she was simply going to have to waive her client-attorney privilege “if any crap hit the fan.”
The following day, Mr. Hyatt advised the ODC of the September 27, 1999 scheduled meeting between Ms. Becnel. Additionally, Mr. Hyatt provided a transcribed copy of the recorded conversation to the ODC.
On September 27, 1999, Ms. Becnel met respondent at respondent’s law office.[5] At the beginning of the meeting, respondent had Ms. Becnel sign a document entitled, “Affidavit Waiving Attorney-Client Privilege.” The parties then discussed settling Ms. Becnel’s lawsuit against the defendant. The meeting lasted approximately eight minutes.[6] The next day, September 28, 1999, Mr. Hyatt filed a formal complaint with the ODC, alleging respondent engaged in ex parte communication with his client.
The ODC alleges respondent’s actions are a violation of Rule 4.2 (ex parte communication with a party represented by counsel) of the Rules of Professional Con *83 duct. Respondent filed a general denial to the allegations of misconduct.
DISCIPLINARY PROCEEDINGS

Formal Charges

Following its investigation, the ODC filed against respondent the two counts of formal charges subject of these proceedings based on the medical provider matter and the Becnel matter. Respondent filed an answer generally denying the charges. Accordingly, the matter proceeded to a formal hearing.

Formal Hearing

At the formal hearing, respondent stipulated that she violated Rule 1.15(a) and Rule 1.15(b) in connection with the medical provider matter. As to the failure to cooperate allegations, respondent testified she received the ODC’s original request and the subsequent letter on the same day. She maintained she replied to one of the letters, but mistakenly failed to respond to the other letter.
As to the Becnel matter, the ODC presented the testimony of Mr. Hyatt and Ms. Becnel to establish that respondent engaged in ex parte communication with Ms. Becnel, while she was represented by counsel without obtaining her counsel’s consent. Respondent testified on her own behalf. According to respondent, she was unaware of the requirement that she had to get consent from an attorney prior to communicating with his client. She observed that her relationship with Mr. Hyatt was contentious at all times and it was impossible for them to discuss settlement of the litigation. Respondent stated that she had made no effort to communicate with Ms. Becnel, and that Ms. Becnel had called her on numerous occasions to speak to her about scheduling a meeting. She insisted that she advised Ms. Becnel to tell Mr. Hyatt they were communicating, and Ms. Becnel assured her she had done so.[7] Moreover, [ ^respondent pointed out that Mr. Hyatt had never contacted her after the parking lot incident to ask her not to speak to his client.

Recommendation of the Hearing Committee

As to the medical provider matter, the hearing committee determined respondent’s actions were a one-time mistake. As a result, it found insufficient evidence of commingling and conversion of funds in violation of Rules 1.15(a) and 1.15(b), respectively. Additionally, it determined there was insufficient evidence that respondent failed to cooperate with the ODC in violation of Rules 8.1(c).[8] In support, it observed, that although respondent failed to reply to one or two requests from the ODC, she immediately responded to the ODC’s other requests.
As to the Becnel matter, the committee concluded the ODC proved by clear and convincing evidence respondent violated Rule 4.2. The committee determined respondent desired to meet with Ms. Becnel in the absence of her attorney, noting re *84 spondent did not ask Ms. Becnel on the tape whether she had permission from her attorney to speak to respondent. It found respondent could have avoided the entire matter by simply faxing a letter to Mr. Hyatt requesting his permission to meet ex 'parte with Ms. Becnel to discuss settlement of their case.
|7Finding only a Rule 4.2 violation based on the ex parte communications, the committee concluded the baseline sanction was a short suspension or a reprimand. It recognized prior discipline as the only aggravating factor.[9] In mitigation, the committee noted the absence of dishonest or selfish motive, character and reputation, and accountability for misconduct. Accordingly, the hearing committee recommended imposition of a fully-deferred three month suspension, subject to additional continuing legal education.

Recommendation of the Disciplinary Board

As to the medical provider matter, the disciplinary board found the hearing committee committed legal error when it failed to find respondent violated Rules 1.15(a) and 1.15(b). In addition to respondent’s stipulation that she violated these rules, the board observed that the evidence in the record demonstrated respondent’s client trust account was overdrawn $700 at the time she owed the funds to Uptown. However, the board found no error in the hearing committee’s finding that respondent did not fail to cooperate with the ODC.
As to the Becnel matter, the board agreed with the committee that respondent violated Rule 4.2 when she engaged in ex paHe communications with Mr. Hyatt’s client. Although respondent objected to the committee’s finding in this regard, the board noted respondent “did not dispute the accuracy of the transcription submitted by ODC.” Further, it pointed out that “[although not determinative, the transcript of Ms. Becnel and Respondent’s telephone conversation of September 21, 1999, doesj^lend some credence to Ms. Becnel’s version of the parking lot encounter.” The board also recognized that Mr. Hyatt had knowledge of the meeting between his client and respondent at respondent’s office. However, it pointed out respondent inappropriately discussed Ms. Becnel’s legal matter with her in the church parking lot and, at that time, respondent “clearly did not have the consent of Mr. Hyatt.”
Addressing the issue of sanctions, the board agreed with the committee’s finding that respondent’s failure t'o pay Uptown stemmed from a one-time mistake, but concluded her actions caused actual harm to Uptown. It found respondent’s misconduct in the Becnel matter also stemmed from negligence and had the potential to cause injury to the legal system. It recognized prior discipline as the only aggravating factor, and absence of dishonest or selfish motive as the only mitigating factor.[10]
Relying on the ABA’s Standards for Imposing Lawyer Sanctions and jurispru *85 dence from this court, the board recommended that respondent be suspended from the practice of law for a period of six months, with all but two months deferred.
One board member filed a partial dissent to the board’s findings that respondent’s violation of Rule 4.2 was merely negligent.
Respondent filed an objection to the recommendation of the disciplinary board. Based on such, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. . La. Const, art. Y, § 5(B). Consequently, we act as triers of fact and conduct an 1 independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
We conclude the record supports the conclusion of the disciplinary board in the medical provider matter. Respondent’s stipulations, as well as the evidence introduced by the ODC, clearly demonstrate that respondent failed to safeguard funds belonging to a third party in violation of Rules 1.15(a) and (b). However, we agree with the conclusion that respondent did not fail to cooperate with the ODC in its investigation of this matter.
As the Becnel matter, the record clearly supports the finding of the hearing committee and the disciplinary board that respondent violated Rule 4.2 by engaging in ex parte communication with a person represented by counsel without first obtaining permission of the counsel.[11] Although respondent asserts she was unaware of this prohibition, her lack of knowledge of the disciplinary rules do not provide a defense to her actions. Louisiana State Bar Ass’n v. Thalheim, 504 So.2d 822 (La.1987).
Having found evidence of professional misconduct, the next issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining |ina sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
We conclude respondent’s actions in the medical provider matter were largely negligent. Her actions caused actual harm to Uptown by depriving it of its funds for a *86 lengthy period of time. In the Becnel matter, we find respondent’s actions were negligent in the sense that she did not believe she was violating the professional rules. No actual harm resulted from her actions, but there was a potential for harm to both Ms. Becnel and to the legal system as a whole.
As an aggravating factor, we recognize respondent’s prior disciplinary record. In mitigation, we find respondent’s misconduct was not the product of a dishonest or selfish motive.
Considering the facts of this case, we conclude the appropriate sanction for respondent’s misconduct is a suspension from the practice of law for a period of six months. We will defer all but two months of that suspension. Following completion of the active portion of her suspension, we shall place respondent on probation for a period of one year, with the condition that she attend Louisiana State Bar Association’s Ethics School program.
|nDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Ermence De-Bose-Parent, Louisiana Bar Roll number 20534, is suspended from the practice of law for a period of six months. All but two months of this suspension shall be deferred. Following the completion of the active portion of her suspension, respondent shall be placed on probation for a period of one year, during which time she shall be required to attend the Louisiana State Bar Association’s Ethics School program. Any violation of this condition or any other misconduct during the probationary period may be grounds for making the deferred portion of the suspension ex-ecutory or imposing other discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CALOGERO, C.J., and JOHNSON, J., dissent and assign reasons.

. The ODC initially filed three counts of formal charges against respondent. The hearing committee and disciplinary board found insufficient evidence to support the first count of the formal charges. The ODC did not file an objection to the board’s recommendation *81 that this charge be dismissed. Accordingly, we will make no further reference to this charge.

. It is unclear from the record whether Mr. DeBose is related to respondent.

. In her affidavit, Ms. Becnel stated:
[Respondent] told me that she helps "little people” and that I should meet with ... one of the defendants in this lawsuit and [respondent] in her office in order to resolve the matter. She also questioned whether I was paying my attorney any fees and stated that I was not receiving good representation. Finally, [respondent] stat *82 ed to me that she could not talk to my counsel, Mr. Donald L. Hyatt, II, to obtain consent for an ex parte communication.

. According to Mr. Hyatt's complaint and formal hearing testimony, he discussed with his client the risks involved, such as signing any settlement documents and an attorney-client waiver, prior to her making the decision to call respondent. However, Ms. Becnel testified she was unable to recall if Mr. Hyatt discussed such issues with her prior to her deciding to call respondent.

. Mr. Hyatt later admitted that he had planned to tape the meeting, but it “proved impossible to do so."

. After the meeting, Ms. Becnel executed an affidavit which stated:
As the meeting continued, [respondent] discussed the merits of the case (including informing me that I was not fired in violation of the Whistleblower Act), its settlement value, and the attorney-client relationship between myself and Mr. Hyatt. Throughout the discussion she repeated views that I could not succeed in this lawsuit and that my attorney was only going to continue this litigation so he could charge me fees. She told me that she might be able to convince ... [defendant] to pay a Five Thousand Dollar ($5,000.00) settlement which would be paid directly to me without any notice to my attorney. [Respondent] stated that she would like to meet with me again on a later date, and she specifically requested that I bring a copy of the attorney-client contract between myself and Mr. Hyatt to any later meeting. [Respondent] told me that she would review the contract between myself and Mr. Hyatt to determine if Mr. Hyatt, as my attorney, was going to cheat me.

. When questioned by her own counsel at the formal hearing, respondent testified as to her belief Ms. Becnel told Mr. Hyatt they were communicating:
Respondent’s counsel: Did you think [Ms. Becnel] had [Mr. Hyatt's] permission to talk to you?
Respondent: Yes.
Respondent’s counsel: What led you to that conclusion?
Respondent: Well, for one thing was, I told her to call her attorney the first time I spoke to her, okay. She kept calling thereafter, and I think in one of the conversations I asked her if she spoke to him, and she told me yes.

. The hearing committee made no reference to the allegation respondent failed to cooperate in violation of Rule 8.4(g), although we assume it rejected this rule violation as well.

. The record only includes evidence of respondent’s June 1997 admonishment stemming from her neglect of a legal matter. However, we also take judicial notice that, on September 26, 2003, the disciplinary board imposed a public reprimand on respondent by consent arising from her admission that she failed to properly supervise a non-attorney employee, who filed by facsimile an improperly prepared petition, which resulted in the dismissal of a client’s case.

. Unlike the committee, the board declined to find as a mitigating factor respondent’s good character or reputation, noting there was insufficient evidence on this point in the record.

. Despite our finding of misconduct on the part of respondent, we question Mr. Hyatt's conduct in this matter. Although respondent's initial decision to discuss the litigation with Ms. Becnel was improper, Mr. Hyatt could have quickly rectified the situation by simply instructing respondent to refrain from speaking with his client. Instead, he involved his client in an elaborate “sting operation” designed to “catch” respondent in misconduct.